**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSEPH ARENA,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., ET AL.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:26-cv-12914-JEK |

**DEFENDANT PACKDRAW LIMITED'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS


**Background** ..... **2**

**I. Factual Background** ..... **2**

**II. Procedural Background** ..... **3**

**III. Jurisdictional Allegations** ..... **3**

**Standard** ..... **4**

**Argument** ..... **5**

**I. Plaintiff's jurisdictional allegations are deficient.** ..... **5**

**II. The Court does not have personal jurisdiction over PackDraw under Massachusetts' long-arm statute.** ..... **5**

*A. Subsections (a) and (b) – PackDraw does not transact business in Massachusetts or contract to supply services in Massachusetts* ..... 6

*B. Subsections (c) and (d) – PackDraw's alleged acts did not cause tortious injury in Massachusetts by acts within and outside Massachusetts* ..... 7

**III. Plaintiff cannot establish personal jurisdiction over PackDraw under the Fourteenth Amendment's Due Process Clause.** ..... **9**

*A. General Jurisdiction* ..... 10

*B. Specific Jurisdiction* ..... 10

1. Plaintiff's injury does not arise from or relate to Packdraw's alleged contacts with Massachusetts ..... 11

2. PackDraw did not purposefully avail itself of Massachusetts ..... 11

3. Exercise of personal jurisdiction is not reasonable ..... 15

**Conclusion** ..... **17**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
812 F.3d 54 (1st Cir. 2016) .......... 4

*Alianza Americas v. DeSantis*,
727 F. Supp. 3d 9 (D. Mass. 2024) .......... 7

*Arena v. Coinbase Global, Inc. et al.*,
No. 2684CV01152 (Suffolk Sup. Ct.) .......... 3

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987) .......... 15, 16

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
825 F.3d 28 (1st Cir. 2016) .......... 4, 12

*Blanding v. FedEx Ground Package Sys., Inc.*,
722 F. Supp. 3d 12 (D. Mass. 2024) .......... 5

*Boit v. Gar-Tec Prods., Inc.*,
967 F.2d 671 (1st Cir. 1992) .......... 4

*Canning v. Gunstock Area Comm'n*,
695 F. Supp. 602 (D. Mass. 1988) .......... 9

*Chen v. United States Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020) .......... *passim*

*Cossaboon v. Maine Med. Ctr.*,
600 F.3d 25 (1st Cir. 2010) .......... 10

*Gargano v. Cayman Nat. Corp.*,
No. CIV.A.09-11938-JLT, 2010 WL 2245034 (D. Mass. June 2, 2010) .......... 13

*Licht v. Binance Holdings Ltd.*,
No. CV 24-10447-NMG, 2025 WL 625303 (D. Mass. Feb. 5, 2025) .......... 5

*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) .......... 12, 13, 14

*Noonan v. Winston Co.*,
902 F. Supp. 298 (D. Mass. 1995), *aff'd*, 135 F.3d 85 (1st Cir. 1998) .......... 8

*Nowak v. Tak How Invs., Ltd.*,
94 F.3d 708 (1st Cir. 1996)....................16

*Power v. Connectweb Techs., Inc.*,
648 F. Supp. 3d 302 (D. Mass. 2023)....................6, 10

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
913 F.3d 11 (1st Cir. 2019)....................5

*Pritzker v. Yari*,
42 F.3d 53 (1st Cir. 1994)....................16

*Regenexx, LLC v. Regenex Health LLC*,
446 F. Supp. 3d 469 (S.D. Iowa 2020)....................10

*Ryan v. Newark Grp., Inc.*,
814 F. Supp. 3d 7 (D. Mass. 2025)....................11

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995)....................16

*Singer v. Piaggio & C. (s. p. a.)*,
420 F.2d 679 (1st Cir. 1970)....................6

*Ticketmaster-New York, Inc. v. Alioto*,
26 F.3d 201 (1st Cir. 1994)....................15, 16

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992)....................15

*United States v. Swiss Am. Bank*,
274 F.3d 610 (1st Cir. 2001)....................4, 11, 14

*United States v. Swiss Am. Bank, Ltd.*,
191 F.3d 30 (1st Cir. 1999)....................5, 8, 9

*Ward v. AlphaCore Pharma, LLC*,
89 F.4th 203 (1st Cir. 2023)....................7

**Statutes**

M.G.L. c. 223A, § 3....................6, 7, 8, 9

**Rules**

Fed. R. Civ. P. 4(k)(2)....................4, 5, 13

Fed. R. Civ. P. 12(b)(2)....................1, 17

**Other Authorities**

U.S. Const. Amend. XIV, § 1 ....................................................................................................4, 9

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant PackDraw Limited ("PackDraw") moves to dismiss Plaintiff Joseph Arena's ("Arena") claims against PackDraw for lack of personal jurisdiction.

Plaintiff Joseph Arena is a Massachusetts resident who alleges that $500,000-worth of his cryptocurrency was stolen by an unknown hacker. (Compl. ¶ 8.) He blames fourteen named defendants plus a John Doe defendant—the various cryptocurrency platforms and exchanges that an alleged hacker exploited—before naming PackDraw as the alleged "final destination" of the funds. (*Id.* ¶¶ 6, 19.) PackDraw is a foreign limited company registered in Cyprus that Plaintiff alleges owns and operates an online gaming platform (referred to here as the "Packdraw.com Platform").[1] (*Id.* ¶ 19.) Some time after his assets were allegedly stolen, Plaintiff alleges that some portion were "dissipated" by the hacker on the packdraw.com platform. (*Id*.) Plaintiff does not allege that any of the specific activity allegedly involving PackDraw took place in Massachusetts, that PackDraw knew or had reason to know the funds had been taken from a Massachusetts resident or that there was any discernible connection to Massachusetts at all.

Plaintiff's jurisdictional theory fails at every step: he pleads no PackDraw conduct reaching Massachusetts under the long-arm statute, no contacts remotely approaching the "at home" standard for general jurisdiction and certainly no facts suggesting that PackDraw purposefully availed itself of Massachusetts or that there is any other basis to support specific jurisdiction. For these reasons, more fully set forth below, the Court should dismiss PackDraw from this lawsuit.

[1] PackDraw denies operating the Packdraw.com Platform as alleged in the Complaint. Packdraw further denies having any personnel or property in Massachusetts or any other contact with Massachusetts.

## Background

### I. Factual Background

The basic facts alleged by Plaintiff are as follows: on November 3, 2025, Plaintiff was targeted by a fraudulent impersonation scheme by an unknown criminal actor who informed Plaintiff that his cryptocurrency account at defendant Kraken[2] was compromised. (*Id.* ¶¶ 37-76.)[3] Plaintiff then transferred $500,000 of cryptocurrency held in his Kraken account to defendant Coinbase. (*Id.* ¶¶ 78-79, 96.) Plaintiff's cryptocurrency was then removed from Plaintiff's Coinbase wallet and transferred to a blockchain address controlled by the hacker. (*Id.* ¶ 97.)

The hacker then sent Plaintiff's cryptocurrency through a series of transactions across multiple addresses and platforms. (*Id.* ¶¶ 112-113.) The stolen cryptocurrency was first routed through defendant KuCoin, a major centralized cryptocurrency exchange. (*Id.* ¶¶ 119-127). From there, a "large portion" of the stolen cryptocurrency was then routed through defendant HoudiniSwap and defendant ChangeNOW, services nested in Bybit. (*Id.* ¶¶ 128-136.) Another portion of Plaintiff's cryptocurrency was routed through defendant EasyBit, an instant exchange service. (*Id.* ¶¶ 137-139.) Defendant Binance provided the liquidity, exchange rails, and transactional capacity that allowed defendant EasyBit to process swaps of the stolen cryptocurrency. (*Id.* ¶ 140.) The hacker also sent stolen cryptocurrency through defendant FixedFloat, another instant exchange service. (*Id.* ¶¶ 144-152.)

After the stolen cryptocurrency was converted, routed, and swapped through the above-described intermediary platforms controlled by other defendants, Plaintiff alleges that

---

[2] PackDraw refers to the other defendants as defined in the Complaint.

[3] Packdraw sets forth the facts as alleged in the Complaint and accepts them as true only for purposes of this Motion.

approximately $315,000 of Plaintiff's cryptocurrency made its way to the Packdraw.com Platform. (*Id.* ¶¶ 153-154.) On information and belief, Plaintiff alleges that the PackDraw.com Platform was the final destination at which Plaintiff's cryptocurrency was "dissipated." (*Id.* ¶ 19.) Other than Plaintiff transferring his funds to Coinbase at the outset of the alleged fraud, Plaintiff does not allege that any of the activities that allegedly resulted in PackDraw receiving the funds took place in Massachusetts. Plaintiff brings two claims under Massachusetts state law against PackDraw: (1) aiding and abetting the hacker's conversion (Claim III) and (2) unjust enrichment (Claim VI).

## II. Procedural Background

Plaintiff filed the Complaint in Massachusetts state court. *See Arena v. Coinbase Global, Inc. et al*., No. 2684CV01152 (Suffolk Sup. Ct.). Defendant Binance removed to this Court based on diversity jurisdiction. (ECF No. 1 at ¶ 23.)

## III. Jurisdictional Allegations

Plaintiff broadly alleges that the "Defendants" provide cryptocurrency services to U.S. users, including Plaintiff, (Compl. ¶ 26) processed, routed, or accepted the transactions involving Plaintiff's cryptocurrency (*id.* ¶¶ 24, 31), earned fees and other revenue from users located in Massachusetts and the U.S. (*id.* ¶ 27); and that Plaintiff was injured in Massachusetts (*id.* ¶¶ 23, 34). Plaintiff's Massachusetts-specific allegations hinge almost entirely on *his* conduct, not the Defendants': Plaintiff is a Massachusetts resident, the transactions at issue were initiated by Plaintiff while located in Massachusetts, and a "substantial portion of the events giving rise to Plaintiff's claims—including Plaintiff's control and ownership of the cryptocurrency, the initiation of the transfer, the decision-making process underlying that transfer, and the resulting economic injury—occurred in Massachusetts." (*Id.* ¶¶ 23, 29, 34.) Plaintiff alleges generally that the "Defendants operate in a global market that includes substantial participation from U.S.

users . . . ." (*Id.* ¶ 32.) Other than suggesting generally that the PackDraw.com Platform is available to users in Massachusetts, Plaintiff does not suggest any connection between PackDraw's conduct here and the Massachusetts forum.

**Standard**

Plaintiff bears the burden of establishing that personal jurisdiction exists in this Court over PackDraw. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). The "prima facie" standard governs a motion to dismiss for lack of personal jurisdiction when decided without an evidentiary hearing. *United States v. Swiss Am. Bank*, 274 F.3d 610, 618 (1st Cir. 2001). Under that standard, the plaintiff must provide the court with "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citation omitted). "It has long been the rule of this circuit . . . that plaintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction" and must "adduce evidence of specific facts." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (citation omitted); *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (citation omitted).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Id.* at 34 (citation omitted). Plaintiff must therefore meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. *A Corp.*, 812 F.3d at 58.[4]

[4] Plaintiff may argue that Fed. R. Civ. P. 4(k)(2) provides an alternative means of establishing personal jurisdiction over PackDraw based on alleged contacts with the United States as a whole. By its terms, however, this rule cannot apply. Rule 4(k)(2) is specifically limited to "claim[s]

## Argument

### I. Plaintiff's jurisdictional allegations are deficient.

As a threshold matter, Plaintiff's jurisdictional allegations are entirely conclusory and not specific to any particular defendant. Such generalized and unsupported jurisdictional pleadings fall woefully short of Plaintiff's burden to establish personal jurisdiction over PackDraw in particular. *See PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 17, n.3 (1st Cir. 2019) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction.") (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980); *Blanding v. FedEx Ground Package Sys., Inc.*, 722 F. Supp. 3d 12, 16 (D. Mass. 2024) (holding plaintiff failed to carry jurisdictional burden where he used "boilerplate language and the conjunction 'and/or' when tying the various defendants to the specific allegation."). Even if Plaintiff's allegations were sufficiently pled as to PackDraw individually, he could not establish personal jurisdiction over it.

### II. The Court does not have personal jurisdiction over PackDraw under Massachusetts' long-arm statute.

Plaintiff's allegations purporting to establish jurisdiction under the Massachusetts long-arm statute are particularly sparse: he includes a single paragraph referring to four bases under

---

that arise[] under federal law." "The rule's fabric [thus] contains three strands: (1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law." *Swiss Am. Bank, Ltd.*, 191 F.3d at 38.

Any argument by the Plaintiff that jurisdiction is proper over PackDraw under Rule 4(k)(2) would end before it begins because Plaintiff has asserted only Massachusetts state law claims, which do not "arise under federal law." *Compare Licht v. Binance Holdings Ltd.*, No. CV 24-10447-NMG, 2025 WL 625303, at *27 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, No. CV 24-10447-NMG, 2025 WL 624025 (D. Mass. Feb. 26, 2025), *appeal docketed*, No. 26-1489 (1st Cir. May 1, 2026) (holding court had personal jurisdiction over cryptocurrency company under Rule 4(k)(2) where plaintiff asserted claims under the federal RICO statute).

the statute, none of which survive scrutiny as to PackDraw. Plaintiff's Paragraph 22 alleges that the Court has personal jurisdiction over "Defendants" generally because "Defendants transacted business in Massachusetts, contracted to supply services to a Massachusetts resident, and caused tortious injury in Massachusetts by acts and omissions within and outside the Commonwealth." (Compl. ¶ 22.) Those allegations loosely correspond to M.G.L. c. 223A, §§ 3(a)-(d), which provides that the court has jurisdiction over the defendant if his acts arise out of:

> (a) transacting any business in this commonwealth;
> (b) contracting to supply services or things in this commonwealth;
> (c) causing tortious injury by an act or omission in this commonwealth; [or]
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

### A. *Subsections (a) and (b) – PackDraw does not transact business in Massachusetts or contract to supply services in Massachusetts*

Subsections (a) and (b) are easily dealt with because they do not apply to PackDraw. Both subsections 3(a) and 3(b) require not just that the defendant transact any business or provide any services in Massachusetts, but that Plaintiff's claims *arise* from the defendant's transaction of such business or provision of services. *See Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 321, 331 (D. Mass. 2023) (holding that to satisfy § 3(a), the plaintiff's claim must have arisen from the defendant's transaction of such business."); *Singer v. Piaggio & C. (s. p. a.)*, 420 F.2d 679, 681 (1st Cir. 1970) ("[T]he phrase 'contracting to supply services or things in this commonwealth' must be read together with the prior phrase, 'cause of action arising from.'"). Plaintiff does not allege any business relationship between himself and PackDraw or any services provided by PackDraw in Massachusetts from which his claims arose—because there were none. To the contrary, Plaintiff himself alleges that any relationship between himself and PackDraw was remote and attenuated: his cryptocurrency was stolen by an unknown hacker

and transferred through a series of defendant intermediaries before some of it was allegedly traded and "dissipated" by an unknown actor on the Packdraw.com Platform. (*Id.* ¶¶ 37, 73, 79, 119, 129, 137, 144, 153.) Those allegations do not suffice.

Plaintiff's generic, conclusory allegation that "Plaintiff's claims arise directly out of Defendants' Massachusetts-related conduct" cannot save him. *First*, the Court need not "credit conclusory allegations or draw farfetched inferences." *Ward v. AlphaCore Pharma, LLC*, 89 F.4th 203, 209 (1st Cir. 2023) (citation omitted). *Second*, as noted above, jurisdictional allegations must be tied to a specific defendant. *See Alianza Americas v. DeSantis*, 727 F. Supp. 3d 9, 34–35 (D. Mass. 2024) (holding that referring to "Defendants" generally is not enough to establish jurisdiction). *Third*, the generic allegation is undermined by Plaintiff's own specific factual allegations concerning PackDraw's (alleged) involvement in the hacker's scheme—that PackDraw allowed the hacker to "dissipate" Plaintiff's cryptocurrency only after a series of swaps and conversions across many different platforms, long after the cryptocurrency had any connection to Massachusetts. (Compl. ¶¶ 37, 73, 79, 119, 129, 137, 144, 153.)

B. *Subsections (c) and (d) – PackDraw's alleged acts did not cause tortious injury in Massachusetts by acts within and outside Massachusetts*

Plaintiff fares no better under subsections 3(c) or (d). Plaintiff alleges generally that "[t]his Court has personal jurisdiction over Defendants under the Massachusetts long-arm statute, G.L. c. 223A, because Defendants . . . caused tortious injury in Massachusetts by acts and omissions within and outside the Commonwealth."

Application of subsection 3(c) can also be easily discarded because Plaintiff does not allege that any act or omission by PackDraw occurred within Massachusetts. "[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act in the Commonwealth that

caused the plaintiff harm." *Noonan v. Winston Co.*, 902 F. Supp. 298, 306 (D. Mass. 1995), *aff'd*, 135 F.3d 85 (1st Cir. 1998). The Complaint contains no such assertion.

Plaintiff also fails to establish personal jurisdiction over PackDraw under subsection 3(d). Subsection (d) includes two prongs: (1) that the defendant's acts must have caused tortious injury in Massachusetts by an act or omission outside Massachusetts and (2) that the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Massachusetts. Plaintiff fails on both elements.

*First*, the tortious injury must occur in Massachusetts. "The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999). Plaintiff's assets were stolen from him before any purported "aiding and abetting" by Packdraw. Wherever PackDraw allegedly "aided and abetted" the hacker there is no allegation that an injury proximately caused *by Packdraw* took place in Massachusetts. Thus, Plaintiff cannot satisfy even the first prong of § 3(d).

*Second*, even if he could overcome the first prong, Plaintiff has not alleged (nor could he) that PackDraw "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in" Massachusetts. M.G.L. c. 223A, § 3(d). The closest Plaintiff comes is his allegation that "PackDraw derived financial benefits from accepting and processing [deposits of the stolen cryptocurrency], including through wagering activity, fees, or other revenue associated with the use of its platform." (Compl. ¶ 158.) Even if it were true (which it is not) that PackDraw derives revenue from transactions involving cryptocurrency *originating* in Massachusetts, as a matter of

established law, that does not qualify as "deriv[ing] substantial revenue from goods used or consumed or services *rendered* in Massachusetts." M.G.L. c. 223A, § 3(d) (emphasis added).

The First Circuit has rejected this argument under analogous facts in *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999). There, the federal government sought to recover from foreign banks money that a third-party criminal had laundered through several shell corporations and eventually deposited with the foreign bank. *Id.* at 35. "[T]he money launderer who generated the cash[] journeyed to Antigua to open the subject accounts and transferred the funds to the [foreign] banks from other foreign locations." *Id.* at 38. The government argued that the Massachusetts federal court had jurisdiction over the foreign banks under subsection 3(d) on the ground that "defendants derived substantial revenue from within the commonwealth because the deposits originated with a Massachusetts resident." *Id.* The First Circuit rejected that argument, holding: "the residency connection, standing alone, is simply too attenuated to satisfy" subsection 3(d)). *Id.* at 38. So too here. The fact that Massachusetts residents may access the Packdraw.com Platform does not mean that Packdraw is doing business there.

Because Plaintiff cannot establish jurisdiction under M.G.L. c. 223A, § 3, the Court should grant PackDraw's motion on this basis alone. *See Canning v. Gunstock Area Comm'n*, 695 F. Supp. 602, 604 (D. Mass. 1988) (declining to reach the constitutional due process question where plaintiffs failed to satisfy the Massachusetts long-arm statute).

## III. Plaintiff cannot establish personal jurisdiction over PackDraw under the Fourteenth Amendment's Due Process Clause.

Even if Plaintiff could satisfy the Massachusetts long-arm statute, this Court lacks personal jurisdiction because exercising jurisdiction will run afoul of the Due Process Clause of the United States Constitution. Due process permits two types of personal jurisdiction: general

and specific. *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010). Plaintiff can satisfy neither.

A. *General Jurisdiction*

Plaintiff does not even try to establish general jurisdiction over any defendant, including PackDraw. To establish general jurisdiction, the defendant's contacts with Massachusetts must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State" for this Court to have general jurisdiction over it. *Chen*, 956 F.3d at 55 (citation omitted). PackDraw is a Cyprus company. To the extent Plaintiff alleges PackDraw has contacts in Massachusetts by allegedly operating a website accessible to Massachusetts residents, that argument fails. Courts have uniformly held that a defendant is not subject to general jurisdiction in a forum merely because its website is accessible there. S*ee e.g.*, *Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 302, 315 (D. Mass. 2023) (fact that defendant did business with Massachusetts residents through interactive website does not establish general jurisdiction); *Regenexx, LLC v. Regenex Health LLC*, 446 F. Supp. 3d 469, 477–78 (S.D. Iowa 2020) (existence of interactive websites "do not render Defendants 'at home' in Iowa.").

B. *Specific Jurisdiction*

Likewise, the Court cannot exercise specific jurisdiction over PackDraw because there is no connection between PackDraw's alleged contacts with the forum (i.e., allegedly operating a website accessible from Massachusetts) and the harm Plaintiff allegedly suffered. The Due Process Clause requires that: (1) "the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum"; (2) "the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in that state"; and (3) "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." *Id.* at 59 (citation omitted). Plaintiff must satisfy all three requirements. *Id.* He cannot do that here.

1. Plaintiff's injury does not arise from or relate to Packdraw's alleged contacts with Massachusetts

To satisfy the relatedness prong, Plaintiff must show "a demonstrable nexus between [his] claims and [PackDraw's] forum-based activities . . . ." *Ryan v. Newark Grp., Inc.*, 814 F. Supp. 3d 7, 18 (D. Mass. 2025) (citing *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)).

Plaintiff's claims fail on the "relatedness" prong for the fundamental reason that "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." *Swiss Am. Bank, Ltd.*, 274 F.3d at 621 (citation omitted). PackDraw is a foreign entity registered and operating in Cyprus (Compl. ¶ 19). Plaintiff alleges no dealings between himself and PackDraw, no communications between himself and PackDraw and no transaction between PackDraw and any person in Massachusetts relating to his claims. The only conduct attributed to PackDraw is its alleged receipt of approximately $315,000 in cryptocurrency at the end of a multi-step laundering chain—assets that reached PackDraw only after passing through "multiple instant exchanges and cross-chain conversion services." (*Id.* ¶¶ 20, 153-154, 282.) That deposit apparently occurred entirely outside Massachusetts and involved no conduct by PackDraw in Massachusetts.

Moreover, even if the Packdraw.com Platform is available in Massachusetts, Plaintiff makes no showing that his claims had anything to do with it. Plaintiff does not allege he ever even accessed the Packdraw.com Platform or even knew about its existence. Plaintiff fails to meet the relatedness prong required for due process.

2. PackDraw did not purposefully avail itself of Massachusetts

There is likewise no credible argument that PackDraw purposefully availed itself of the Massachusetts forum. The purposeful availment inquiry asks whether a defendant has "deliberately targeted its behavior toward the society or economy of a particular forum such that

the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising LLC*, 825 F.3d at 36 (citation omitted, cleaned up). The two cornerstones of "purposeful availment" are voluntariness and foreseeability. *Id.* "[V]oluntariness demands that the defendant's contacts with the forum result proximately from its own actions." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 124 (1st Cir. 2022). Voluntariness requires a showing of factors indicating something "over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." *Id.* 124–25 (citation omitted). "Foreseeability demands that 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[A] finding of purposeful availment necessarily requires more than the unilateral activities of third parties." *Chen*, 956 F.3d at 59.

Plaintiff's sole allegation that PackDraw availed itself of Massachusetts is that it allegedly operates the Packdraw.com Platform, which is accessible throughout the world including in Massachusetts and that PackDraw may derive revenue from users in Massachusetts. (Compl. ¶¶ 19, 281.) None of these contacts show the deliberate targeting required by the Due Process Clause.

This Court and the First Circuit have rejected the idea that operating a website that is accessible by Massachusetts residents can be considered purposeful availment under the Due Process Clause absent evidence that the defendant was specifically targeting Massachusetts residents. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 124–25 (1st Cir. 2022). In *Motus*, plaintiff alleged that defendant committed trademark infringement on its website, which was available to potential customers in Massachusetts. *Id.* Plaintiff argued that defendant's

services were advertised and available to Massachusetts residents and that, therefore, the court could exercise specific jurisdiction over the trademark claims. The First Circuit, however, confirmed that absent evidence of specific targeting of Massachusetts residents, merely operating a website accessible from the forum is not purposeful availment. *Id.*

As in *Motus*, there is no evidence that PackDraw specifically targeted business in Massachusetts. "Nothing in the record indicates that [PackDraw] has sought to serve Massachusetts residents at all, let alone that [PackDraw] has sought to serve Massachusetts residents in particular." *Motus, LLC*, 23 F.4th at 120.

That "PackDraw derived financial benefits from accepting and processing" the allegedly stolen cryptocurrency (Compl. ¶ 158) says nothing about where PackDraw earned that revenue: its alleged counterparty was the John Doe hacker, not Plaintiff, and the funds arrived only through the unilateral routing choices of the hacker whose own location the Complaint never alleges. That is the quintessential unilateral conduct of a third party that defeats voluntariness. *See Gargano v. Cayman Nat. Corp.*, No. CIV.A.09-11938-JLT, 2010 WL 2245034, at *6 (D. Mass. June 2, 2010) (holding no personal jurisdiction over foreign bank under Fed. R. Civ. P. 4(k)(2) because "the fact that Defendants *received* money from Plaintiff's United States bank account is not purposeful availment of an opportunity to act in the United States. The receipt of a wire transfer is an inherently passive action.") (emphasis in original); *see also Chen*, 956 F.3d at 61 (holding that plaintiff's alleged Massachusetts-specific contacts, including tuition payments made from Massachusetts, stemmed from plaintiff's unilateral activity and therefore could not constitute purposeful availment).

Finally, the alleged "injurious effect" of PackDraw's conduct in Massachusetts also is not enough. In *United States v. Swiss American Bank*, the First Circuit rejected a similar argument by

the plaintiff that it was harmed by a foreign bank's refusal to release drug proceeds deposited by a third-party criminal. 274 F.3d 610, 623 (1st Cir. 2001). Distinguishing the case from *Calder v. Jones*, the court held that, unlike in *Calder*, where "the actual tort or injury, not just its consequences, occurred within the forum," "any tortious conversion or breach of contract occurred in Antigua." *Id.* at 624. So too here—PackDraw's alleged aiding and abetting of the hacker's conversion or unjust enrichment would have occurred somewhere other than Massachusetts.[5]

For similar reasons, PackDraw cannot reasonably anticipate being haled into court here. PackDraw "cannot be subjected to specific jurisdiction in Massachusetts based on its maintenance of an online [gambling] platform accessible in . . . the Commonwealth." *Chen*, 956 F.3d at 60. Even if PackDraw "perhaps could have anticipated that Massachusetts residents (like residents of any other state) might . . . access its online [gambling] platform from the Commonwealth," "this broad and generic degree of foreseeability is insufficient, standing alone, to rise to the level of purposeful availment . . . ." *Id.*

---

[5] Moreover, "[t]he *Calder* approach makes eminent sense as applied to intentional torts directed at a particular victim. The conduct is voluntary, and the tortfeasor can reasonably foresee that the location of the victim is likely to be the place where he will be haled into court." *Motus, LLC*, 23 F.4th at 126. But where, as here, the victim's identity was unknown to PackDraw, it cannot have targeted Plaintiff in the forum like the defendant did in *Calder*. *See id.* at 126 ("There is nothing in the record showing that [the defendant] knew that [the plaintiff] existed, let alone that [it] was based in Massachusetts.").

Because PackDraw did not purposefully avail itself of Massachusetts, this Court cannot exercise personal jurisdiction over it—especially here where Plaintiff's claims have nothing to do with the alleged contacts.

3. <u>Exercise of personal jurisdiction is not reasonable</u>

Finally, the Court's exercise of jurisdiction over PackDraw would not be reasonable. Courts assess reasonableness based on the *Gestalt* factors: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, (1985)). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

Because Plaintiff's arguments on relatedness and purposeful availment are particularly weak, the reasonableness element is less important here. But even if considered, the *Gestalt* factors are, at best, a wash.

The first and fifth factors weigh against jurisdiction: PackDraw is a Cypriot company and compelling it to appear in Massachusetts is "onerous in terms of distance." *Ticketmaster-New York, Inc.*, 26 F.3d at 210. That burden, "and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales." *Id.* The burdens on a foreign defendant are weightier still, and "should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*

*Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987). For similar reasons, the fifth factor, sovereign interests, counsels restraint: "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," and the Court must weigh "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction," along with the federal interest in foreign relations. *Id.* at 115 (citation omitted). The second factor likewise favors PackDraw. "Although a forum state has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished where the injury occurred outside the forum state." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996) (citation omitted). Here, there is no evidence that any harm allegedly caused by PackDraw's alleged conduct occurred in Massachusetts and, as to PackDraw, there are no allegations of any "significant events [that] took place in Massachusetts giving it an interest in this litigation." *Id.* at 718.

The remaining two factors do not close the gap. Plaintiff's residence and forum choice merit some deference under the third factor, *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995), and the fourth—administration of justice—"does not appear to cut in either direction," *Ticketmaster-New York, Inc.*, 26 F.3d at 211. Plaintiff may argue that fourteen defendants make consolidation efficient and that the fourth factor "counsels against furcation of the dispute among several different jurisdictions." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). But co-defendants who may be amenable to suit here cannot bootstrap jurisdiction over one who is not; the convenience of consolidated litigation is no substitute for minimum contacts.

At best, then, the *Gestalt* factors are neutral. And because Plaintiff's showing on relatedness and purposeful availment is so weak, it would be unreasonable for the Court to exercise jurisdiction over PackDraw based solely on Plaintiff's Massachusetts residency and the

convenience of suing fourteen defendants in one forum. Because due process defeats a finding of personal jurisdiction over PackDraw, the Court should dismiss it from this action.

**Conclusion**

For these reasons, the Court should grant PackDraw's motion to dismiss under Fed. R. Civ. P. 12(b)(2).

/s/*Maya Ginga Ritchie*
David L. Ferrera (BBO# 631183)
dferrera@nutter.com
Maya Ginga Ritchie (BBO# 705397)
mgritchie@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

Joseph A. Meckes (*pro hac vice forthcoming*)
joseph.meckes@squirepb.com
Squire Patton Boggs (US) LLP
550 California Street, Suite 1100
San Francisco, CA 94104
(415) 954-0201

Dated: August 12, 2026

*Counsel for Defendant PackDraw Limited*

## CERTIFICATE OF SERVICE

I certify that, on August 12, 2026, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/Maya Ginga Ritchie*
Maya Ginga Ritchie

8177693