**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSEPH ARENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-12914-JEK |
| | ) | |
| COINBASE GLOBAL, INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT PACKDRAW LIMITED'S**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**
**FOR LACK OF PERSONAL JURISDICTION**

## Table of Contents


**Introduction** .......... **1**

**Background** .......... **2**

**I. Procedural Background** .......... **2**

**II. Factual Background** .......... **2**

**III. Plaintiff's Jurisdictional Allegations Against PackDraw** .......... **4**

**IV. PackDraw Limited Does Not Operate the PackDraw Platform** .......... **4**

**Standard** .......... **5**

**Argument** .......... **5**

**I. The Court does not have jurisdiction over PackDraw under Rule 4(k)(1)(A).** .......... **5**

A. *Plaintiff cannot establish personal jurisdiction over PackDraw under Massachusetts' long-arm statute.* .......... 6

1. Subsections (a) and (b) – PackDraw does not transact business in Massachusetts or contract to supply services in Massachusetts .......... 7

2. Subsection (d) – PackDraw's alleged acts did not cause tortious injury in Massachusetts by acts outside Massachusetts .......... 8

B. *Plaintiff cannot establish personal jurisdiction over PackDraw in Massachusetts under the Fourteenth Amendment's Due Process Clause.* .......... 9

1. General Jurisdiction .......... 9

2. Specific Jurisdiction .......... 10

**II. The Court does not have jurisdiction over PackDraw under Rule 4(k)(2).** .......... **16**

**III. The Court need not allow jurisdictional discovery.** .......... **19**

**Conclusion** .......... **19**

## Table of Authorities

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
812 F.3d 54 (1st Cir. 2016) ........ 5, 6

*Asahi Metal Indus. Co. v. Superior Ct.*,
480 U.S. 102 (1987) ........ 15

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
825 F.3d 28 (1st Cir. 2016) ........ 5, 11

*Boit v. Gar-Tec Prods., Inc.*,
967 F.2d 671 (1st Cir. 1992) ........ 5

*Canning v. Gunstock Area Comm'n*,
695 F. Supp. 602 (D. Mass. 1988) ........ 9

*Chen v. United States Sports Acad., Inc.*,
956 F.3d 45 (1st Cir. 2020) ........ *passim*

*Cossaboon v. Maine Med. Ctr.*,
600 F.3d 25 (1st Cir. 2010) ........ 9

*Gargano v. Cayman Nat. Corp.*,
No. CIV.A.09-11938-JLT, 2010 WL 2245034 (D. Mass. June 2, 2010) ........ 13

*Hanson v. Denckla*,
357 U.S. 235 (1958) ........ 13

*Licht v. Binance Holdings Ltd.*,
No. CV 24-10447-NMG, 2025 WL 624025 (D. Mass. Feb. 26, 2025) ........ 19

*Licht v. Binance Holdings Ltd.*,
No. CV 24-10447-NMG, 2025 WL 625303 (D. Mass. Feb. 5, 2025) ........ 19

*In re Lupron Mktg. & Sales Pracs. Litig.*,
245 F. Supp. 2d 280 (D. Mass. 2003) ........ 17

*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) ........ 11, 12, 14

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
905 F.3d 1 (1st Cir. 2018) ........ 16, 17

*Power v. Connectweb Techs., Inc.*,
648 F. Supp. 3d 321 (D. Mass. 2023) .......... 7

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
913 F.3d 11 (1st Cir. 2019) .......... 5, 13

*Ryan v. Newark Grp., Inc.*,
814 F. Supp. 3d 7 (D. Mass. 2025) .......... 10

*Sawtelle v. Farrell*,
70 F.3d 1381 (1st Cir. 1995) .......... 16

*Singer v. Piaggio & C. (s. p. a.)*,
420 F.2d 679 (1st Cir. 1970) .......... 7

*Ticketmaster-New York, Inc. v. Alioto*,
26 F.3d 201 (1st Cir. 1994) .......... 15, 16

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
960 F.2d 1080 (1st Cir. 1992) .......... 15

*United States v. Swiss Am. Bank, Ltd.*,
191 F.3d 30 (1st Cir. 1999) .......... 2, 8, 13

*United States v. Swiss Am. Bank, Ltd.*,
274 F.3d 610 (1st Cir. 2001) .......... *passim*

**Statutes**

18 U.S.C. § 1962 .......... 4

18 U.S.C. § 1964 .......... 4

M.G.L. c. 109A, § 5 .......... 4

M.G.L. c. 109A, § 8 .......... 4

M.G.L. c. 109A, § 9 .......... 4

M.G.L. c. 223A, § 3 .......... *passim*

**Rules**

Fed. R. Civ. P. 4(k) .......... *passim*

Fed. R. Civ. P. 12(b)(2) .......... 1, 2, 5, 20

**Constitutional Provisions**

U.S. Const. Amend. V, Fifth Amendment ............................................................ 1, 16, 17

U.S. Const. Amend. XIV, Fourteenth Amendment ............................................................ *passim*

**Other Authorities**

4A Fed. Prac. & Proc. Civ. § 1069 (4th ed.) ............................................................ 6

## Introduction

Pursuant to Fed. R. Civ. P. 12(b)(2), Defendant PackDraw Limited ("PackDraw") submits this memorandum in support of its motion to dismiss Plaintiff Joseph Arena's ("Plaintiff") First Amended Complaint ("Amended Complaint") against PackDraw for lack of personal jurisdiction.

Plaintiff's original complaint named fourteen defendants—an assortment of cryptocurrency exchanges, instant-swap services, and online cryptocurrency platforms scattered across Saint Vincent and the Grenadines, the Seychelles, Singapore, the Cayman Islands, and Cyprus—on the theory that each bore some measure of responsibility for an anonymous criminal's theft of Plaintiff's cryptocurrency. Plaintiff dismissed eight of those fourteen defendants. (FAC ¶¶ 17-27.) Proceedings against the two defendants with whom Plaintiff actually had an account relationship—Coinbase and Kraken, both U.S. companies—are stayed pending arbitration. (FAC ¶¶ 15, 20.) What is left of this case against PackDraw Limited is the result of that winnowing. PackDraw is a Cypriot private limited company, with its registered office and principal place of business in Nicosia, that Plaintiff never dealt with, never communicated with at the time of the theft, and never transacted with, sued in a forum with which it has no connection at all.

The Amended Complaint's jurisdictional defect is not a matter of degree. PackDraw Limited is a holding company. (Hartmann Decl. ¶ 3.) It owns 100% of PackDraw US, LLC, a Delaware company that operates the PackDraw platform. (*Id.* ¶¶ 2-3.) PackDraw Limited has no employees, operations, property or offices in the United States. (*Id.* ¶ 4.) PackDraw Limited does not service customers in the U.S. or derive revenue directly from U.S. customers. (*Id.*) It likewise has no contacts with Massachusetts in particular and no relevant contacts with the United States

as a whole (*id.* ¶¶ 4-5)—which is fatal under both the Fourteenth Amendment analysis Plaintiff invokes through the Massachusetts long-arm statute and the Fifth Amendment analysis he invokes through Rule 4(k)(2), because "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 621 (1st Cir. 2001). The only real thread tying PackDraw to this forum is Plaintiff's residency, and the First Circuit has held that "the residency connection, standing alone, is simply too attenuated" to support jurisdiction over a foreign defendant. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 38 (1st Cir. 1999). Nor can Plaintiff's newly pleaded January 2026 unilateral contact by his lawyers to PackDraw (FAC ¶ 13) form the basis of personal jurisdiction. *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 59 (1st Cir. 2020) ("[A] finding of purposeful availment necessarily requires more than the unilateral activities of third parties."). For those reasons, the Court should dismiss PackDraw under Rule 12(b)(2).

## Background

### I. Procedural Background

Plaintiff filed the original Complaint in Massachusetts state court. *See Arena v. Coinbase Global, Inc. et al.,* No. 2684CV01152 (Suffolk Sup. Ct.). After Defendant Binance removed to this Court based on diversity jurisdiction (ECF No. 1 at ¶ 23), PackDraw moved to dismiss for lack of personal jurisdiction (ECF Nos. 43-44). Plaintiff then filed the Amended Complaint. (ECF No. 46.)

### II. Factual Background

Despite the hundreds of additional allegations in the Amended Complaint, the central facts remain the same: in November 2025, Plaintiff was targeted by an unknown criminal actor (referred to as John Doe), who convinced Plaintiff to move approximately $500,000 of cryptocurrency into his Coinbase Wallet, where the hacker then removed it to threat-actor

addresses. (FAC ¶¶ 82–87, 92, 94–96, 120.) The hacker then routed the stolen cryptocurrency through a series of transactions across multiple addresses, assets, and blockchains. (*Id.* ¶¶ 97–98, 137.) The Bitcoin was fragmented through a "peel chain" and sent in successive portions to third-party service deposit addresses. (*Id.* ¶¶ 130–133.) Those services—HoudiniSwap, ChangeNOW, ChangeHero, Easybit, and FixedFloat, among others not yet identified—converted the funds into different assets on different blockchains. (*Id.* ¶¶ 128–129, 139–148, 155–174, 201–204.)

Only after those conversions and routings does the Amended Complaint reach PackDraw. Plaintiff alleges that approximately $315,571.54 of his cryptocurrency was "sent to" the PackDraw platform through thirteen deposits between November 4 and November 12, 2025, across four blockchains. (*Id.* ¶¶ 10, 213, 215–236, 352.) The Amended Complaint now identifies each deposit by hash, amount, and receiving address (*id.* ¶¶ 216–236), but the core allegation is the same: cryptocurrency allegedly originating from Plaintiff's Kraken wallet arrived at blockchain addresses that a third-party tracing firm attributes to PackDraw after a series of complex routings and conversions. (*Id.* ¶¶ 12, 25, 244.) Everything beyond the arrival of funds at PackDraw deposit addresses—that PackDraw assigned the addresses, credited customer accounts, permitted wagering or withdrawal, and earned revenue—is pleaded on information and belief. (*Id.* ¶¶ 11, 246–248, 359–360, 378.) So is the threshold allegation that PackDraw Limited owns or operates the platform, which Plaintiff premises on the tracing attribution, a published contact email, and PackDraw's appearance in this action. (*Id.* ¶¶ 25–26.) As explained below, this is incorrect. (Hartmann Decl. ¶ 2.) The only truly new PackDraw-specific conduct Plaintiff adds concerns unilateral contact by Plaintiff long after the deposits: that in January 2026 Plaintiff

notified PackDraw of the theft, his Massachusetts residence, and requested account records. (FAC ¶¶ 13, 62, 257–262, 267–268, 376.)

Plaintiff now brings four claims against PackDraw: (1) aiding and abetting the hacker's conversion (Count III), (2) fraudulent/voidable transfer under M.G.L. c. 109A, §§ 5(a)(1), 8, 9 (Count V), (3) equitable restitution/unjust enrichment (Count VI), and (4) violation of the civil RICO statute, 18 U.S.C. §§ 1962(c) & 1964(c) (Count VII).

## III. Plaintiff's Jurisdictional Allegations Against PackDraw

Like the original Complaint, other than Plaintiff's own initial transfer from his Kraken wallet to Coinbase at the outset of the alleged fraud, the Amended Complaint still does not allege that any of the activity that resulted in PackDraw receiving the funds took place in Massachusetts. Plaintiff does not allege that PackDraw solicited him, communicated with him before his counsel's post-theft outreach, or transacted with any identified Massachusetts user. He alleges instead, on information and belief, that PackDraw "knowingly conducts transaction and gaming business with users located in the United States, including Massachusetts," "does not categorically exclude Massachusetts users," and derives revenue from that activity (*id.* ¶¶ 60, 72), and asks for jurisdictional discovery to develop those facts (*id.* ¶¶ 78–81, 564(h)).

## IV. PackDraw Limited Does Not Operate the PackDraw Platform

But contrary to Plaintiff's information-and-belief allegation, the entity PackDraw Limited does not "own[], operate[], control[], administer[], and/or materially participate[] in the operation of the cryptocurrency gaming platform known as PackDraw[.]" (FAC ¶ 25.) PackDraw Limited is purely a holding company, which holds 100% of PackDraw US, LLC ("PackDraw US"). (Hartmann Decl. ¶ 3.) PackDraw Limited has no employees, operations, property or offices in the U.S., does not service customers in the U.S., and does not derive revenue directly from U.S. customers. (*Id.* ¶ 4.) It is PackDraw US that operates the PackDraw platform. (*Id.* ¶ 2.)

PackDraw US is a limited liability company based in Delaware. (*Id.* ¶ 2.) PackDraw Limited therefore has no relevant contacts with the United States as a whole, much less with Massachusetts.

**Standard**

Plaintiff bears the burden of establishing that personal jurisdiction exists in this Court over PackDraw. *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). The "prima facie" standard governs a motion to dismiss for lack of personal jurisdiction when decided without an evidentiary hearing. *United States v. Swiss Am. Bank Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). Under that standard, the plaintiff must provide the court with "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citation omitted). "It has long been the rule of this circuit . . . that plaintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction" and must "adduce evidence of specific facts." *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (citation omitted); *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020) (citation omitted). Courts may consider affidavits submitted by the defendant in connection with a Rule 12(b)(2) motion. *See PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 16 (1st Cir. 2019) (crediting defendant's affidavits).

**Argument**

**I. The Court does not have jurisdiction over PackDraw under Rule 4(k)(1)(A).**

Plaintiff alleges that he can show that this Court has specific personal jurisdiction over PackDraw under Federal Rule of Civil Procedure 4(k)(1)(A), M.G.L. c. 223A, § 3, and the Due Process Clause "to the extent" he can establish PackDraw's Massachusetts-specific contacts. (FAC ¶ 56.) He cannot.

Under Rule 4(k)(1)(A), jurisdiction may be established over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" In other words, "[w]hen Rule 4(k)(1)(A) is the basis for personal jurisdiction in federal court, the federal court must apply the state's long arm statute and the Fourteenth Amendment due process test that would apply in state court." 4A Fed. Prac. & Proc. Civ. § 1069 (4th ed.).

A. *Plaintiff cannot establish personal jurisdiction over PackDraw under Massachusetts' long-arm statute.*

Plaintiff cannot establish personal jurisdiction over PackDraw under the Massachusetts long-arm statute. "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Baskin-Robbins Franchising LLC*, 825 F.3d at 34 (citation omitted). Plaintiff must therefore meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. *A Corp.*, 812 F.3d at 58.

Plaintiff alleges "*[t]o the extent* PackDraw regularly conducts or solicits business in Massachusetts, engages in a persistent course of conduct involving Massachusetts users, contracts to provide transaction or gaming services to Massachusetts users, or derives substantial revenue from services rendered in Massachusetts, jurisdiction is authorized under G.L. c. 223A, § 3(a), (b), and/or (d)." (FAC ¶ 61 (emphasis added).) That statute provides that the Court has jurisdiction over the defendant if his acts arise out of:

> (a) transacting any business in this commonwealth;
> (b) contracting to supply services or things in this commonwealth; . . .
> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

1. Subsections (a) and (b) – PackDraw does not transact business in Massachusetts or contract to supply services in Massachusetts

Subsections (a) and (b) do not apply to PackDraw. PackDraw does not service customers in or derive revenue directly from customers in the U.S. as a whole, and has had no contact with Massachusetts at any time in its existence. (Hartmann Decl. ¶¶ 4-5.) PackDraw therefore does not "conduct or solicit business in Massachusetts, engage in a persistent course of conduct involving Massachusetts users, contract to provide transaction or gaming services to Massachusetts users, or derive substantial revenue from services rendered in Massachusetts." (FAC ¶ 61.)

Moreover, both subsections 3(a) and 3(b) require not just that the defendant transact any business or provide any services in Massachusetts, but that Plaintiff's claims *arise* from the defendant's transaction of such business or provision of services. *See Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 321, 331 (D. Mass. 2023) (holding that to satisfy § 3(a), the plaintiff's claim must have arisen from the defendant's transaction of such business); *Singer v. Piaggio & C. (s. p. a.)*, 420 F.2d 679, 681 (1st Cir. 1970) ("[T]he phrase 'contracting to supply services or things in this commonwealth' must be read together with the prior phrase, 'cause of action arising from.'"). Plaintiff's Amended Complaint still does not allege any business relationship between himself and PackDraw or any services provided by PackDraw in Massachusetts from which his claims arose—because there were none. Plaintiff attempts to characterize the relationship between himself and PackDraw as something other than the receipt of the hacker's stolen cryptocurrency: "The active claims against PackDraw arise from its repeated receipt, account-level processing, and monetization of traced proceeds . . . ." (FAC ¶ 14.) But even Plaintiff's newest articulation of PackDraw's connection to Plaintiff fails: his cryptocurrency was stolen by an unknown hacker and transferred through a series of defendant-

intermediaries before some of it was allegedly traded and "dissipated" by the unknown hacker on the PackDraw.com platform (which PackDraw does not operate). (*Id.* ¶¶ 10–12, 27, 97, 137, 237–38, 243, 250, 273, 295, 379, 448–49, 452–53, 501.) Those allegations do not suffice.

2. Subsection (d) – PackDraw's alleged acts did not cause tortious injury in Massachusetts by acts outside Massachusetts

Plaintiff fares no better under subsection 3(d). Subsection (d) includes two prongs: (1) that the defendant's acts must have caused tortious injury in Massachusetts by an act or omission outside Massachusetts and (2) that the defendant regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Massachusetts.

Even if Plaintiff could overcome the first prong, Plaintiff has not alleged (nor could he) that PackDraw "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in" Massachusetts. M.G.L. c. 223A, § 3(d). Again, PackDraw has no Massachusetts customers and derives no revenue from Massachusetts-based customers. (Hartmann Decl. ¶¶ 4-5.)

The First Circuit has rejected this argument under analogous facts in *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999) (*Swiss I*).[1] There, the federal government sought to recover from foreign banks money that a third-party criminal (their customer and Massachusetts resident) had laundered through several shell corporations and eventually deposited with the foreign banks. *Id.* at 35. "[T]he money launderer who generated the cash[]

---

[1] The First Circuit issued two decisions in the *Swiss American Bank* case, both relevant here. *Swiss I* held that the Massachusetts long-arm statute did not reach the Antiguan bank defendants and, construing Rule 4(k)(2), set out the framework before remanding. 191 F.3d at 38–41, 46. *Swiss II* applied that framework and affirmed dismissal, holding the government had shown neither general nor specific jurisdiction based on contacts with the United States as a whole. 274 F.3d at 619–26. Jurisdiction was thus unavailable under both the long-arm statute and Rule 4(k)(2).

journeyed to Antigua to open the subject accounts and transferred the funds to the [foreign] banks from other foreign locations." *Id.* at 38. The government argued that the Massachusetts federal court had jurisdiction over the foreign banks under subsection 3(d) on the ground that "defendants derived substantial revenue from within the commonwealth because the deposits originated with a Massachusetts resident." *Id.* at 38. The First Circuit rejected that argument, holding: "the residency connection, standing alone, is simply too attenuated to satisfy" subsection 3(d). *Id.* So too here. The fact that Plaintiff is a Massachusetts resident "standing alone" does not qualify for jurisdiction over a foreign defendant under subsection 3(d).

Because Plaintiff cannot establish jurisdiction under M.G.L. c. 223A, § 3, the Court should grant PackDraw's motion on this basis alone. *See Canning v. Gunstock Area Comm'n*, 695 F. Supp. 602, 604 (D. Mass. 1988) (declining to reach the constitutional due process question where plaintiffs failed to satisfy the Massachusetts long-arm statute).

B. *Plaintiff cannot establish personal jurisdiction over PackDraw in Massachusetts under the Fourteenth Amendment's Due Process Clause.*

Even if Plaintiff could satisfy the Massachusetts long-arm statute, exercising jurisdiction over PackDraw runs afoul of the Due Process Clause of the United States Constitution. Due process permits two types of personal jurisdiction: general and specific. *Cossaboon v. Maine Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010). Plaintiff can satisfy neither.

1. <u>General Jurisdiction</u>

Plaintiff seems to concede that the Court does not have general jurisdiction over PackDraw. He labels the jurisdictional allegations against PackDraw "Massachusetts Specific Jurisdiction Over PackDraw." (FAC, Section E.) To establish general jurisdiction, the defendant's contacts with Massachusetts must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Chen*, 956 F.3d at 55 (citation omitted). PackDraw is

a Cypriot company with no contacts in Massachusetts. (Hartmann Decl. ¶ 5.) The Court plainly does not have general jurisdiction over PackDraw, as Plaintiff appears to concede.

2. Specific Jurisdiction

Likewise, the Court cannot exercise specific jurisdiction over PackDraw because there is no connection between PackDraw's alleged contacts with Massachusetts (cryptocurrency belonging to a Massachusetts resident) and the harm Plaintiff allegedly suffered (stolen cryptocurrency). The Due Process Clause requires that: (1) "the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum"; (2) "the defendant's forum-state contacts must represent a purposeful availment of the privilege of conducting activities in that state"; and (3) "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." *Id.* at 59 (citation omitted). Plaintiff must satisfy all three requirements. *Id.* He cannot do that here.

a. *Plaintiff's injury does not arise from or relate to PackDraw's alleged contacts with Massachusetts*

To satisfy the relatedness prong, Plaintiff must show "a demonstrable nexus between [his] claims and [PackDraw's] forum-based activities . . . ." *Ryan v. Newark Grp., Inc.*, 814 F. Supp. 3d 7, 18 (D. Mass. 2025) (citing *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)).

Plaintiff's claims fail on the "relatedness" prong for the fundamental reason that "there can be no requisite nexus between the contacts and the cause of action if no contacts exist." *Swiss Am. Bank, Ltd.*, 274 F.3d at 621 (citation omitted). PackDraw is a private limited company with its registered office and principal place of business in Nicosia, Cyprus. (FAC ¶ 24.) Plaintiff still alleges no dealings between himself and PackDraw, no communications between himself and PackDraw, and no transaction between PackDraw and any person in Massachusetts relating to his claims. The only conduct attributed to PackDraw is its alleged receipt of approximately

$315,000 in cryptocurrency at the end of a multi-step laundering chain—assets that reached PackDraw only after the assets were "rapidly fragmented, converted across multiple blockchains, [and] routed through privacy-oriented swap services." (FAC ¶¶ 1, 10.) But for Plaintiff's own first step of transferring his cryptocurrency from his Kraken account, the laundering scheme apparently occurred entirely outside Massachusetts and certainly involved no conduct by PackDraw in Massachusetts.

Plaintiff argues that he "does not rely merely upon the accessibility of PackDraw's website or upon the fortuity that a Massachusetts resident's property eventually reached a foreign recipient." (FAC ¶ 57.) But the very next sentence alleges exactly that: that his claims "concern PackDraw's . . . operation of an interactive cryptocurrency transaction and gaming platform through which PackDraw repeatedly accepted Arena-linked assets, attributed those deposits to customer account(s), credited corresponding platform value, permitted wagering, transfer, or withdrawal, and derived revenue from the use of the property." (*Id.*) Plaintiff alleges that PackDraw operates a website potentially accessible in Massachusetts where his stolen cryptocurrency was deposited—nothing more.

b. *PackDraw did not purposefully avail itself of Massachusetts*

There is likewise no credible argument that PackDraw purposefully availed itself of the Massachusetts forum. The purposeful availment inquiry asks whether a defendant has "deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior." *Baskin-Robbins Franchising LLC*, 825 F.3d at 36 (citation omitted, cleaned up). The two cornerstones of "purposeful availment" are voluntariness and foreseeability. *Id.* "[V]oluntariness demands that the defendant's contacts with the forum result proximately from its own actions." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 124 (1st Cir. 2022). Voluntariness

requires a showing of factors indicating something "over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." *Id.* 124–25 (citation omitted). "Foreseeability demands that 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "[A] finding of purposeful availment necessarily requires more than the unilateral activities of third parties." *Chen*, 956 F.3d at 59.

Again, Plaintiff attempts to disavow that his only Massachusetts connections are the existence of the Packdraw.com Platform and Plaintiff's residency—but despite his conclusory characterization, that is what his allegations boil down to. (FAC ¶ 57.) Operation of a nationwide website, without more, is not sufficient to satisfy specific jurisdiction in this Court. *See Motus, LLC*, 23 F.4th at 125 ("The mere availability of a primarily informational website is not enough — by itself — to render a defendant susceptible to jurisdiction in a particular forum.") (citation omitted); *Chen*, 956 F.3d at 60 (holding "maintenance of an online learning platform accessible in (and allegedly accessed by [the plaintiff] from) the Commonwealth" is not enough).

Nor can the "something more" be supplied by Plaintiff's "to-the-extent-that" allegation that PackDraw derives revenue from Massachusetts customers. (FAC ¶¶ 60-61.) First, PackDraw does not derive revenue from Massachusetts customers. (Hartmann Decl. ¶¶ 4-5.) Second, even if it did, this allegation says nothing about where PackDraw *earned* that revenue: its alleged counterparty was the John Doe hacker, not Plaintiff, and the funds arrived only through the unilateral routing choices of the hacker whose own location the Amended Complaint never alleges. That is the quintessential unilateral conduct of a third party that defeats voluntariness. *See Chen*, 956 F.3d at 61 (holding that plaintiff's alleged Massachusetts-specific contacts,

including tuition payments made from Massachusetts, stemmed from plaintiff's unilateral activity and therefore could not constitute purposeful availment). Again, Plaintiff attempts to characterize PackDraw's receipt of the stolen cryptocurrency as some kind of active participation in the scheme, but ultimately PackDraw was (allegedly) merely the recipient of stolen funds that originated in Massachusetts. (FAC ¶ 57 ("PackDraw repeatedly accepted Arena-linked assets, attributed those deposits to customer account(s), credited corresponding platform value, permitted wagering, transfer, or withdrawal, and derived revenue from the use of the property.").) "[T]he fact that [a defendant] *received* money from [a plaintiff]'s United States bank account is not purposeful availment of an opportunity to act in the United States. The receipt of a wire transfer is an inherently passive action." *See Gargano v. Cayman Nat. Corp.*, No. CIV.A.09-11938-JLT, 2010 WL 2245034, at *6 (D. Mass. June 2, 2010) (emphasis in original).

The newly alleged January 2026 letter from Plaintiff's counsel to PackDraw is likewise irrelevant to personal jurisdiction. (FAC ¶¶ 257-261.) It is black letter law that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A single, after-the-fact communication by the Plaintiff's representative is not sufficient jurisdictional contact. *See PREP Tours, Inc.*, 913 F.3d at 23 (holding defendant's preliminary inquiry sent remotely into the forum insufficient to establish purposeful availment).

Finally, the alleged "injurious effect" of PackDraw's conduct in Massachusetts also is not enough. The First Circuit rejected a similar argument by the government in *Swiss American Bank* that it was harmed by the foreign bank's refusal to release drug proceeds deposited by a Massachusetts resident (a closer connection than the unknown third-party hacker here). *Swiss*

*Am. Bank, Ltd.*, 274 F.3d 610, 622 (1st Cir. 2001) (*Swiss II*). Distinguishing the case from *Calder v. Jones*, the court held that, unlike in *Calder*, where "the actual tort or injury, not just its consequences, occurred within the forum," "any tortious conversion or breach of contract occurred in Antigua." *Id.* at 624. So too here—the conduct underlying Plaintiff's aiding and abetting, unjust enrichment, and fraudulent transfer claims again PackDraw occurred somewhere other than Massachusetts.[2]

For similar reasons, PackDraw cannot reasonably anticipate being haled into court here. PackDraw "cannot be subjected to specific jurisdiction in Massachusetts based on its maintenance of an online [gaming] platform accessible in . . . the Commonwealth." *Chen*, 956 F.3d at 60. Even if PackDraw "perhaps could have anticipated that Massachusetts residents (like residents of any other state) might . . . access its online [gaming] platform from the Commonwealth," "this broad and generic degree of foreseeability is insufficient, standing alone, to rise to the level of purposeful availment . . . ." *Id.*

Because PackDraw did not purposefully avail itself of Massachusetts, this Court cannot exercise personal jurisdiction over it—especially here where Plaintiff's claims have nothing to do with the alleged contacts.

---

[2] Moreover, "[t]he *Calder* approach makes eminent sense as applied to intentional torts directed at a particular victim. The conduct is voluntary, and the tortfeasor can reasonably foresee that the location of the victim is likely to be the place where he will be haled into court." *Motus, LLC*, 23 F.4th at 126. But where, as here, the victim's identity was unknown to PackDraw, it cannot have targeted Plaintiff in the forum like the defendant did in *Calder*. *See id.* at 126 ("There is nothing in the record showing that [the defendant] knew that [the plaintiff] existed, let alone that [it] was based in Massachusetts.").

c. *Exercise of personal jurisdiction is not reasonable*

Finally, the Court's exercise of jurisdiction over PackDraw would not be reasonable. Courts assess reasonableness based on the *Gestalt* factors: (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

Because Plaintiff's arguments on relatedness and purposeful availment are particularly weak, PackDraw need make only a modest showing of unreasonableness. But even if considered, the *Gestalt* factors are, at best, a wash.

The first, fifth, and second factors weigh against jurisdiction. PackDraw is a Cypriot company and compelling it to appear in Massachusetts is "onerous in terms of distance." *Ticketmaster-New York, Inc.*, 26 F.3d at 210. That burden, "and its inevitable concomitant, great inconvenience, are entitled to substantial weight in calibrating the jurisdictional scales." *Id.* For similar reasons, the fifth factor, sovereign interests, counsels restraint: "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," and the Court must weigh "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction," along with the federal interest in foreign relations. *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 115 (1987) (citation omitted).

The second factor likewise favors PackDraw. A forum's interest is considerably weaker where the injury arose outside its borders and the acts alleged to have caused it occurred almost entirely elsewhere. *Sawtelle v. Farrell*, 70 F.3d 1381, 1395 (1st Cir. 1995). Here, "the acts comprising [PackDraw's] alleged [wrongdoing] occurred . . . entirely outside of [Massachusetts]." *Id.*

The remaining two factors do not close the gap. Plaintiff's residence and forum choice merit some deference under the third factor, *Sawtelle*, 70 F.3d at 1395, and the fourth—administration of justice—"does not appear to cut in either direction," *Ticketmaster-New York, Inc.*, 26 F.3d at 211.

## II. The Court does not have jurisdiction over PackDraw under Rule 4(k)(2).

Having added a RICO claim, the Plaintiff also now alleges that the Court has federal personal jurisdiction over PackDraw under Fed. R. Civ. P. 4(k)(2). Under that rule, "the constitutional limits of the court's personal jurisdiction are fixed not by the Fourteenth Amendment but by the Due Process Clause of the Fifth Amendment." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citation omitted). "The Rule functions as a species of federal long-arm statute" where a plaintiff need "show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." *Id*. Rule 4(k)(2) has three requirements: (1) the cause of action must arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction must comport with due process. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018) (citing *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 38 (1st Cir. 1999)).

Though Plaintiff's newly-added RICO claim satisfies Rule 4(k)(2)'s threshold requirement of a federal claim, it does not show that the exercise of personal jurisdiction over PackDraw would comport with due process. Like the Fourteenth Amendment, Fifth Amendment

"[d]ue process requires that the defendant 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Plixer Int'l, Inc.*, 905 F.3d at 7 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To prove PackDraw's minimum contacts with the U.S., he must show the same three elements as under the Fourteenth Amendment minimum contacts analysis: that "(1) [his] claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Id.* at 7. Because PackDraw has *no* relevant contacts with the U.S. whatsoever, Plaintiff cannot show minimum contacts that comport with due process.[3]

*Swiss II* is directly on point and dictates the outcome here. 274 F.3d 610, 620 (1st Cir. 2001). There, the government argued two relatedness contacts between the foreign bank and the U.S. to satisfy Rule 4(k)(2)'s due process requirement: (1) the foreign bank's relationship with its customer, the Massachusetts-resident drug dealer and (2) the injury of the bank's conversion was felt in the United States. *Id.* at 621.

The Court rejected the first argument because a contract "is not itself a contact with the United States as a forum" and the government failed to establish any other contact by the foreign bank with the U.S., including any communications by the defendant to its customer in the U.S. *Id.* Instead, like here, "the evidence show[ed] that [the Massachusetts resident] opened the . . .

---

[3] "There is a longstanding common-law presumption that a separately incorporated subsidiary is institutionally independent of its parent and that jurisdiction cannot therefore be asserted over a parent based solely on the conduct of the subsidiary." *In re Lupron Mktg. & Sales Pracs. Litig.*, 245 F. Supp. 2d 280, 291 (D. Mass. 2003).

accounts in Antigua and that most of the $7 million came not directly from the United States, but from 'other foreign locations.'" *Id.* at 622.

The Court also rejected the government's in-forum injury argument. The government argued that the Antiguan bank's role in advising the Massachusetts resident to launder $7 million in drug proceeds through an account in Antigua and the bank's subsequent disbursement of those funds caused wrongful effects—the loss of the money to the United States government—felt in the United States. *Id.* The Court rejected that argument for the fundamental reason that the government could "point to no in-forum activities *by* [*defendant*] that relate to its claim." *Id.* at 623 (emphasis in original).[4]

So too here: like in *Swiss II*, the cryptocurrency came not "directly from the United States," but via a "multi-chain laundering sequence," and was ultimately deposited by the unknown hacker. (FAC ¶¶ 3-4.) And it is not enough that Plaintiff was harmed in Massachusetts by PackDraw's (alleged) outside-of-Massachusetts conduct. If anything, the alleged contacts in *Swiss II* were stronger than here: the Antiguan bank had a direct customer relationship with the U.S. resident, PackDraw has no such direct relationship with the plaintiff here, and did not "advise" the third-party hacker to dissipate the cryptocurrency on PackDraw's site.

*Licht v. Binance Holdings Ltd.*, on the other hand, is distinguishable. No. CV 24-10447-NMG, 2025 WL 625303, at *1 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025). The *Licht* plaintiffs were also victims of scams by unknown third parties concerning their cryptocurrency. *Id.* at *1. The plaintiffs alleged similar conversion-type and RICO claims against Binance, Binance's CEO, Zhao, and BAM, the

---

[4] Again, the court also rejected the government's reliance on *Calder v. Jones* to "stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001) (citation omitted).

company that did business as Binance. *Id.* The court found Binance and Zhao's contacts with the U.S. were "ample": Binance employed 100 people based in the United States and used United States-based servers, agreed to the forfeiture of $1.6 billion in fees for transactions involving United States-based users in a related criminal case, intended to allow U.S.-based VIP users to continue to access Binance.com (the platform operated by Binance, in contrast with co-defendant BAM), and still had U.S.-based Binance users even after the launch of Binance.US. *Id.* at *32. In contrast, PackDraw does not have any U.S. employees, operations, property, or offices and does not service U.S.-based customers or directly derive revenue from U.S. customers. (Hartmann Decl. ¶ 4.)

Because the Court's exercise of personal jurisdiction over a foreign defendant with no contacts with the U.S. does not comport with due process, there is no jurisdiction under Rule 4(k)(2).

## III. The Court need not allow jurisdictional discovery.

Plaintiffs who make out a "colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery . . . ." *Swiss Am. Bank, Ltd.*, 274 F.3d at 625 (citation omitted, emphasis in original). Because PackDraw has no relevant contacts with the United States whatsoever, much less contacts related to Plaintiff's claims, Plaintiff has not made out a colorable case for personal jurisdiction. In any event, the facts stated in Mr. Hartmann's declaration under oath provide the information Plaintiff would need to assess jurisdiction, making additional discovery futile.

## Conclusion

For these reasons, the Court should grant PackDraw's motion and dismiss the Amended Complaint against PackDraw under Fed. R. Civ. P. 12(b)(2).

/s/*Maya Ginga Ritchie*
David L. Ferrera (BBO# 631183)
dferrera@nutter.com
Maya Ginga Ritchie (BBO# 705397)
mgritchie@nutter.com
Nutter, McClennen & Fish, LLP
Seaport West, 155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: (617) 439-2000
Facsimile: (617) 310-9000

Joseph A. Meckes (*pro hac vice forthcoming*)
joseph.meckes@squirepb.com
Squire Patton Boggs (US) LLP
550 California Street, Suite 1100
San Francisco, CA 94104
(415) 954-0201

Dated: September 15, 2026

*Counsel for Defendant PackDraw Limited*

**CERTIFICATE OF SERVICE**

I certify that, on September 15, 2026, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/Maya Ginga Ritchie*
Maya Ginga Ritchie

8260720