**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

-----------------------------------------------------x
JOSEPH ARENA,

Plaintiff,

Civil Action No.
1:26-cv-12914-JEK

v.

COINBASE GLOBAL, INC.; COINBASE, INC.; PAYWARD, INC. d/b/a KRAKEN; CHN GROUP LLC d/b/a CHANGENOW; FIXED-FLOAT d/b/a FF.IO; PACKDRAW LIMITED; and JOHN DOE,

Defendants.
-----------------------------------------------------x

**OPPOSITION TO PACKDRAW'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

## INTRODUCTION

Joseph Arena's ("Arena") claims concern the alleged processing and dissipation of specifically identified stolen property through PackDraw's customer-account infrastructure. zeroShadow reported approximately $315,571.54 sent to PackDraw and separately identified thirteen deposits across four blockchains between November 4 and November 12, 2025. The First Amended Complaint (ECF. No. 46) ("FAC") alleges that those deposits generated account credits available for wagering, transfer, conversion, or withdrawal. FAC ¶¶ 212–248; FAC Ex. A (ECF. No. 46-1) at 7, 9, 12. Those transactions provide a defined basis for examining the responsible entity and its suit-related contacts.

Rule 4(k)(2) supplies an independent nationwide jurisdictional route for Arena's federal RICO claim. The relevant forum is the United States as a whole. Limited concedes the federal-claim requirement, Arena certified that reasonable investigation identified no available State forum, and Limited identifies none. Def.'s Mem. (ECF No. 53) ("Def.'s Mem.") 16; FAC ¶ 69. The constitutional inquiry nevertheless requires proof of Limited's own conduct or properly attributable contacts and their relationship to Arena's claims.

PackDraw's published Terms identify deliberate U.S. offerings and the transaction functions implicated here: physical fulfillment in the United States and Canada, sweepstakes generally open nationwide, and cryptocurrency funding, withdrawals, account restrictions, refunds, and fees. Terms at 5–9, 24. The August 2026 Terms name PackDraw US, LLC as operator and include Limited within the PackDraw Group; Hartmann confirms Limited's complete ownership of that subsidiary. Terms at 1, 26; Hartmann Decl. ¶¶ 2–3. Those later materials do not explain which entity controlled the receiving wallets, account credits, and withdrawal decisions during November 2025.

Arena's discovery request addresses both historical responsibility and the necessary forum connection. It identifies the deposits, relevant functions, and records—including wallet permissions, account ledgers, withdrawal approvals, intercompany agreements, and customer-location information—that could establish Limited's participation and suit-related national activity. The Court should deny the motion or, at minimum, defer ruling for forty-five days of targeted production, followed by one narrowly scoped deposition and supplemental briefing. Any jurisdictional dismissal should be without prejudice.

## BACKGROUND

### A. The theft targeted Arena in Massachusetts and deprived him of approximately $500,000 in cryptocurrency.

Arena resides in Massachusetts and was the lawful owner of the cryptocurrency at issue. FAC ¶ 17. On November 3–4, 2025, an unidentified actor ("Doe") targeted Arena with fraudulent security communications and telephone calls impersonating cryptocurrency-exchange support personnel. Arena received and acted upon those communications in Massachusetts, transferring assets into what he believed was a self-custodial wallet under his exclusive control. FAC ¶¶ 33, 82–90; FAC Ex. A (ECF No. 46-1), zeroShadow Victim Intelligence Report ("Report"), at 5.

On November 4, 2025, Doe obtained unauthorized control of 2.8256166 BTC, valued at approximately $301,081.06, and 198,587.726 USDC, valued at approximately $198,581.84. The two transactions represented approximately $499,662.90 in stolen cryptocurrency. FAC ¶¶ 92–96; Report at 5.

### B. Transaction records trace substantial theft proceeds through successive conversions to PackDraw-attributed deposit addresses.

Arena retained zeroShadow on November 5, 2025. Its December 18, 2025 Report reconstructs the subsequent movement of his property through successive Bitcoin transfers, instant

exchanges, and conversions across multiple blockchains. FAC ¶¶ 124–138. zeroShadow supplemented blockchain analysis with withdrawal information obtained directly from HoudiniSwap and Easybit. For tracing from an Ethereum address that had also received funds suspected to originate from other victims, it used Last In, First Out tracing. Report at 6–9.

The Report identifies approximately $315,571.54 as having been sent to the PackDraw platform. Its appendix separately itemizes thirteen PackDraw-attributed deposits between November 4 and November 12, 2025, identifying each transaction's hash, receiving address, date, blockchain, asset, and value. FAC ¶¶ 212–243; Report at 7, 9, 12. The deposits span Bitcoin, Ethereum, BNB Smart Chain, and Solana and repeatedly converge at the same receiving addresses. Four Ethereum deposits alone reached one address within approximately forty-nine minutes on November 12. FAC ¶¶ 227–238.

The FAC relies on the Report's stated amount and expressly reserves reconciliation of that figure with the appendix entries, and determination of the assets' ultimate disposition, for discovery. FAC ¶¶ 241–243.

### C. PackDraw's published Terms identify a U.S.-directed platform, affiliated entities, and authority over cryptocurrency transactions.

PackDraw's Terms of Service, captured September 30, 2026 and marked "Last Updated: August 8, 2026," identify PackDraw US, LLC as the website's operator. Their corporate disclosure identifies both that Delaware entity and PackDraw Limited ("Limited"), a Cypriot company, as members of the "PackDraw Group." Terms at 1, 26. The Terms appear at the platform's dedicated U.S. address, packdraw.com/en-us/terms. *Id.* at 1.

The Terms describe commercial offerings directed to U.S. residents. Physical fulfillment is available in the United States, where offered, and Canada; residents elsewhere may exchange items for cryptocurrency withdrawals. Unless otherwise specified, sweepstakes eligibility extends

to residents of all fifty States and the District of Columbia, subject to the stated restrictions. *Id*. at 6, 24. The Terms select Florida law and designate Miami-Dade County courts for customer disputes outside arbitration. *Id*. at 14.

The Terms also reserve discretion over cryptocurrency payment and withdrawal methods, refunds, administrative fees, redemptions, and account restrictions. *Id*. at 5, 7–9, 24. These published provisions identify the platform's U.S. offerings and relevant transaction functions. The captured Terms postdate Arena's deposits and do not identify how responsibility for those functions was allocated between the affiliated entities in November 2025.

### D. The FAC pleads Limited's participation, a federal RICO claim, and alternative bases for personal jurisdiction.

The FAC alleges, on information and belief, that Limited operated, controlled, administered, or materially participated in the platform functions through which Arena's property was received and processed. FAC ¶¶ 25–26. It further alleges that the identified deposits were associated with customer accounts, credited as cryptocurrency or platform value, and made available for wagering, transfer, conversion, or withdrawal, producing financial benefits for PackDraw. FAC ¶¶ 246–248, 359–378.

Count VII alleges that Limited knowingly participated in an association-in-fact enterprise involving Doe, persons controlling the relevant wallets and recipient accounts, and transaction participants engaged in converting, concealing, and monetizing stolen cryptocurrency. It invokes money-laundering predicates under 18 U.S.C. §§ 1956 and 1957 for qualifying transactions and alleges related acts and a threat of continued activity. FAC ¶¶ 474–480, 492–518. The alleged injury concerns the further transformation, monetization, and dissipation of specific Arena-linked property processed through the platform, impairing Arena's ability to recover it. FAC ¶¶ 519–530.

The related state-law claims concern the same property and transaction sequence. FAC Counts III, V–VI; ¶¶ 76–77.

The FAC expressly pleads Massachusetts-specific jurisdiction and, independently, jurisdiction over the federal claim under Rule 4(k)(2). FAC ¶¶ 56–77. It alleges recurring cryptocurrency-account and gaming transactions with U.S. users, including Massachusetts users, and revenue from that activity. It connects the claims to the deposit, account-crediting, wagering, transfer, and withdrawal infrastructure allegedly used to receive and monetize Arena's property. FAC ¶¶ 57–60, 72–74. Arena and counsel also certify that reasonable investigation identified no State in which Limited is subject to suit on the federal claim. FAC ¶ 69.

### E. Notice identified the victim and transactions; internal records remain necessary to establish the recipients, responsible entity, and subsequent conduct.

By at least January 2026, Arena or his representatives notified PackDraw of the theft, Arena's Massachusetts location, and the identified deposit transactions, and sought recipient-account information and preservation of recovery options. FAC ¶¶ 257–262. The FAC alleges that PackDraw has not disclosed the recipient account holders' identities or the complete associated account, KYC, wagering, withdrawal, IP, and device records. FAC ¶¶ 267–268.

The public blockchain does not disclose the account holders' identities or locations, the platform's internal credits, or the timing and disposition of resulting account value. FAC ¶¶ 249–255, 272–280. zeroShadow specifically recommended obtaining KYC, transaction, device, and IP records to identify the recipients and determine the status of the stolen property. Report at 11.

The FAC expressly requests targeted jurisdictional discovery into those accounts, control of the receiving infrastructure, and U.S. and Massachusetts transaction activity. FAC ¶¶ 25–26, 78–81. The requested records would also permit determination of whether identifiable assets or

substitute account value remained when notice arrived and what subsequent transactions occurred. FAC ¶¶ 273–280.

**F. Limited's declaration leaves the relevant historical allocation of operational responsibility unexplained.**

Limited moves under Rule 12(b)(2) and requests dismissal with prejudice. Def.'s Mot. at 2. Its memorandum acknowledges that the RICO claim satisfies Rule 4(k)(2)'s threshold federal-claim requirement. Def.'s Mem. at 16.

Limited's General Counsel, Christoffer Hartmann, identifies PackDraw US, LLC as the operator and describes Limited as a holding company owning that subsidiary outright. Hartmann Decl. ¶¶ 2–3. He denies Limited's operation or administration of the platform, U.S. employees or operations, service of U.S. customers, and direct receipt of their revenue. *Id*. ¶¶ 2–4. He separately denies Massachusetts contacts "at any time ever in its existence." *Id*. ¶ 5.

The Massachusetts denial is expressly historical; the operational and nationwide-contact statements are phrased in the present tense. The declaration does not identify when PackDraw US was formed or began operating the platform, or describe which entity controlled the relevant wallets, recipient accounts, transaction decisions, and records during the November 2025 deposits and January 2026 notice. Those historical responsibilities, together with the geographic information associated with the identified accounts and transactions, are subjects of the requested discovery.

## STANDARDS

**A. The prima facie standard requires supported facts and credits Arena's evidence on genuinely contested issues.**

When the Court resolves a Rule 12(b)(2) motion without an evidentiary hearing, the prima facie standard governs. Arena must proffer specific evidence that, taken at face value, establishes the facts necessary for jurisdiction; conclusory allegations do not suffice. The Court accepts his

properly supported proffers as true, credits his version of genuinely contested facts, and considers Limited's jurisdictional facts only insofar as they are uncontradicted. *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 54, 56 (1st Cir. 2020). Arena retains the burden of establishing jurisdiction, but the Court does not resolve genuine evidentiary conflicts against him under this standard.

The inquiry encompasses the complaint and supplemental jurisdictional materials. Public documents may be considered without an authenticating affidavit where their accuracy and authenticity are uncontested and no reason to question their reliability has been identified. *Putnam v. EPR Props.*, 174 F.4th 214, 224 (1st Cir. 2026). A sworn denial therefore does not automatically displace contrary documentary evidence.

### B. Massachusetts jurisdiction and nationwide jurisdiction require separate analyses.

Under Rule 4(k)(1)(A), Arena must establish an enumerated basis under the Massachusetts long-arm statute before the Court reaches Fourteenth Amendment due process. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 329–30 (2017).

Rule 4(k)(2) independently permits jurisdiction over a federal claim where the defendant is not subject to jurisdiction in any State's courts of general jurisdiction and exercising jurisdiction is consistent with the Constitution and laws of the United States. The constitutional inquiry concerns the defendant's contacts with the United States as a whole. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6–7 (1st Cir. 2018).

Under the First Circuit's burden-shifting framework, the plaintiff must make the requisite prima facie showing and certify, based on readily available information, that no State forum is available. The defendant then bears a burden of producing evidence of an available State forum or constitutionally insufficient national contacts. The certification does not replace the plaintiff's constitutional showing. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41–42 (1st Cir. 1999).

*Fuld v. Palestine Liberation Organization* holds that Fifth Amendment due process does not incorporate the Fourteenth Amendment minimum-contacts standard and permits a more flexible inquiry. 606 U.S. 1, 16, 23 (2025). In *Saul v. Valnet Inc.*, this Court reserved *Fuld*'s precise application to Rule 4(k)(2), concluding that satisfaction of the traditional nationwide minimum-contacts test necessarily satisfies the less stringent *Fuld* standard. No. 1:25-cv-12236-JEK, 2026 WL 1878312, at *3 (D. Mass. June 30, 2026). Under that traditional framework, relatedness, purposeful availment, and reasonableness are evaluated against the nationwide forum. *Plixer*, 905 F.3d at 7.

### C. A diligent, supported discovery request must identify facts capable of establishing jurisdiction.

A diligent plaintiff presenting a colorable jurisdictional case may obtain limited discovery by specifying the information sought and explaining how it could establish jurisdiction. Discovery remains discretionary, even when that threshold is met. *Swiss Am. Bank*, 274 F.3d 610, 625–26 (1st Cir. 2001).

*Putnam* illustrates the distinction: discovery was required where concrete evidence genuinely contested operational involvement and tailored requests could establish relevant forum contacts; it was properly denied where the evidence did not contest the necessary contacts and the request remained skeletal. 174 F.4th at 225–28. Arena's request must therefore connect the identified records to Limited's jurisdictionally relevant conduct, rather than rely solely on shared branding, ownership, or the prospect of uncovering merits evidence.

## ARGUMENT

### I. Arena's supported showing warrants targeted jurisdictional discovery into Limited's historical role and suit-related forum contacts.

The Court should permit forty-five days of focused jurisdictional production, followed by one narrowly scoped deposition and supplemental briefing. Arena has identified the receiving transactions, relevant platform functions, affiliated entities, and records needed to determine Limited's role and its connection to the asserted forum contacts. He preserved that request in the FAC ¶¶ 78–81.

A diligent plaintiff presenting a colorable jurisdictional case may obtain limited discovery by identifying the information sought and explaining how it could establish jurisdiction. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625–26 (1st Cir. 2001). Although discovery remains discretionary, *Putnam v. EPR Properties* required a tailored inquiry where concrete evidence contested operational involvement and the requested records could establish relevant forum contacts. 174 F.4th 214, 225–27 (1st Cir. 2026). Its contrasting treatment of EPR confirms that the inquiry must connect each defendant's role to the contacts necessary for jurisdiction. *Id.* at 227–28.

Arena's request addresses both questions. zeroShadow reported approximately $315,571.54 sent to PackDraw and separately identified thirteen deposits between November 4 and November 12, 2025, with transaction hashes and receiving addresses across four blockchains. FAC ¶¶ 212–243; FAC Ex. A at 7, 9, 12. The FAC alleges that the deposits were credited to customer accounts and made available for wagering, transfer, conversion, or withdrawal. FAC ¶¶ 246–248. Those identified transactions provide a defined starting point for examining the responsible entity and associated account locations.

The August 2026 Terms name PackDraw US, LLC as operator, identify Limited within the PackDraw Group, and describe U.S. commercial offerings and authority over cryptocurrency

transactions. Terms at 1, 5–9, 24, 26. Hartmann confirms Limited's complete ownership of US, LLC while denying Limited's operational involvement and direct U.S.-customer business. Hartmann Decl. ¶¶ 2–4. His Massachusetts denial expressly reaches the company's entire existence. *Id.* ¶ 5. Neither the later Terms nor the declaration identifies when US, LLC began operating the platform or explains the allocation of wallet, account, transaction, and compliance authority during the November 2025 deposits and January 2026 notice.

Those historical responsibilities matter to recognized jurisdictional theories. Discovery would test Limited's direct participation and whether another entity acted on its behalf in the conduct giving rise to the claims. An established agency relationship or ratification can permit attribution of suit-related contacts. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55–56 (1st Cir. 2002). *Mullaly* likewise permitted discovery into a parent's own forum contacts and operational control of its subsidiary where the evidence left those responsibilities unresolved. *Mullaly v. Sunrise Senior Living Mgmt., Inc.*, 224 F. Supp. 3d 117, 124, 126–27 (D. Mass. 2016).

The requested geographic and commercial records would separately test purposeful engagement with the nationwide market and the relationship between that activity and Arena's claims. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6–10 (1st Cir. 2018). Arena therefore seeks:

1. **Historical operational responsibility:** Formation dates, operator agreements, and records establishing when responsibility for the relevant functions began or changed.
2. **Wallet and account authority:** Records identifying the entities and personnel authorized to administer the receiving addresses, credit accounts, and approve withdrawals, restrictions, refunds, or redemptions.
3. **The thirteen deposits:** Account assignments, internal processing and disposition histories, fees, and available KYC, IP, device, and other account-location information.
4. **Limited's participation:** Agreements and records showing its performance, direction, authorization, or ratification of the implicated transaction and customer-service functions.

5. **Relevant forum business:** Aggregate U.S. and Massachusetts customer counts, transaction volume, and revenue associated with those functions from November 4, 2025 through commencement, identifying Limited's role.
6. **Notice and subsequent decisions:** Nonprivileged records identifying who handled Arena's January 2026 notice, controlled the relevant accounts, and decided the disposition of any remaining Arena-linked property or account value.

These requests address who performed the challenged functions, under whose authority, and with what suit-related geographic connections. Massachusetts business and revenue records would also test the commercial conditions asserted under G.L. c. 223A, § 3(d). Production would encompass records within Limited's possession, custody, or control and identify affiliated custodians where necessary; aggregate reporting and a protective order would safeguard unrelated customer information.

The Court should hold the motion in abeyance, or deny it without prejudice to renewal, while permitting this production, one Rule 30(b)(6) deposition of Limited confined to these subjects, and supplemental jurisdictional briefing.

## II. Limited's asserted lack of Massachusetts contacts does not defeat Arena's independent nationwide jurisdictional route under Rule 4(k)(2).

Rule 4(k)(2) requires a separate nationwide inquiry into Arena's federal RICO claim. It permits jurisdiction following service where the claim arises under federal law, no State forum is available, and jurisdiction accords with the Constitution and laws of the United States. The relevant forum is the United States as a whole. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6–7 (1st Cir. 2018). Limited concedes the federal-claim requirement, Arena certified the absence of an available State forum, and Limited identifies none. Def.'s Mem. 16; FAC ¶ 69. That certification addresses the State-forum requirement without replacing Arena's constitutional showing. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41–42 (1st Cir. 1999).

PackDraw's equation of Fifth and Fourteenth Amendment standards overlooks intervening authority. Def.'s Mem. 17. *Fuld v. Palestine Liberation Organization* rejects incorporation of the

Fourteenth Amendment minimum-contacts standard into the Fifth Amendment and recognizes a more flexible inquiry. 606 U.S. 1, 16, 23 (2025). In *Saul v. Valnet Inc.*, this Court reserved *Fuld*'s precise application to Rule 4(k)(2), holding that satisfaction of the traditional nationwide minimum-contacts test necessarily satisfies *Fuld*'s less stringent standard. No. 1:25-cv-12236-JEK, 2026 WL 1878312, at *3 (D. Mass. June 30, 2026). Arena seeks that same approach: assess relatedness, purposeful availment, and reasonableness against the nationwide forum.

The published Terms identify deliberate U.S. commercial offerings: physical fulfillment in the United States and Canada, sweepstakes generally open to residents of all fifty States and the District of Columbia, and a dedicated U.S. locale. Terms at 1, 6, 24. They also describe cryptocurrency deposits, withdrawals, fees, refunds, account restrictions, and redemptions. *Id.* at 5–9, 24. Knowing, recurring U.S. commerce can establish purposeful availment without domestic offices or employees. *Plixer*, 905 F.3d at 8–10.

Arena's claim concerns specific use of that transaction infrastructure. zeroShadow reported approximately $315,571.54 sent to PackDraw and separately identified thirteen deposits across four blockchains between November 4 and November 12, 2025. FAC ¶¶ 212–243; FAC Ex. A at 7, 9, 12. Arena alleges that those deposits generated customer-account credits available for wagering, conversion, transfer, or withdrawal. FAC ¶¶ 246–248. The requested account-location and processing records would establish whether that conduct connected Arena's claims to Limited's national commerce.

That inquiry must remain specific to Limited. The August 2026 Terms name PackDraw US, LLC as operator and include Limited within the PackDraw Group; Hartmann confirms complete ownership while denying Limited's operational involvement. Terms at 1, 26; Hartmann Decl. ¶¶ 2–4. Ownership and branding alone do not establish attribution. Neither document explains the

allocation of wallet and account authority during the November 2025 deposits. Discovery would determine Limited's own participation and any properly attributable conduct.

*Swiss American* requires an actual connection between the claims and national activities; injury to a U.S. victim alone does not suffice. 274 F.3d 610, 623–24 (1st Cir. 2001). Arena's focused requests address that connection, together with the extent of Limited's national business relevant to reasonableness. See *Plixer*, 905 F.3d at 12–13. The Court should therefore assess Rule 4(k)(2) independently and, at minimum, defer ruling pending the targeted discovery requested in Argument I.

**III. PackDraw's U.S. offerings and traced deposits warrant an entity-specific inquiry into purposeful availment and relatedness.**

Arena's showing identifies a defined jurisdictional inquiry: whether Limited performed or authorized the processing of the traced deposits, and whether that processing involved deliberate U.S. commerce. The discovery requested in Argument I would test those questions through records tied to identified transactions, accounts, and operational functions.

Knowing, recurring U.S. business can establish purposeful availment without domestic offices or employees. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8–10 (1st Cir. 2018). Relatedness separately requires a meaningful connection between the defendant's forum activities and the claims, although strict causation is not invariably necessary. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021). Relatedness was conceded in *Plixer*; Arena must therefore establish that connection independently. 905 F.3d at 7.

The Terms identify deliberate U.S. offerings and relevant transaction functions: physical fulfillment in the United States and Canada, sweepstakes generally open nationwide, and cryptocurrency funding, withdrawals, restrictions, refunds, and fees. Terms at 1, 5–9, 24. They name PackDraw US, LLC as operator and include Limited within the PackDraw Group; Hartmann

confirms complete ownership while denying Limited's operational involvement. Terms at 1, 26; Hartmann Decl. ¶¶ 2–4. Those statements are compatible with corporate separateness. But the August 2026 Terms postdate the deposits, and neither they nor the declaration explains when US, LLC assumed the relevant functions or how transaction authority was allocated during November 2025.

The tracing supplies the transactions against which that allocation can be tested. zeroShadow reported approximately $315,571.54 sent to PackDraw and separately identified thirteen deposits across four blockchains between November 4 and November 12, 2025. FAC ¶¶ 212–243; FAC Ex. A at 7, 9, 12. Arena alleges that the deposits generated customer-account credits available for wagering, transfer, conversion, or withdrawal. FAC ¶¶ 246–248.

The requested records would establish both responsibility and geography. Account assignments, KYC and IP information would identify the recipients and their locations. Wallet permissions, processing instructions, and withdrawal approvals would identify the responsible personnel, where they acted, and the entity on whose behalf they acted. Intercompany agreements and fee records would clarify delegated authority and the commercial allocation of those functions. Together, these records could establish whether Limited handled the identified property through U.S. operations or U.S. customer relationships, directly or through properly attributable conduct.

*United States v. Swiss American Bank, Ltd.* requires claim-related national activity; domestic injury alone is insufficient. 274 F.3d 610, 623–24 (1st Cir. 2001). Arena's request targets the conduct and geographic connection that requirement demands. General U.S. business cannot substitute for that showing, but neither can the present record resolve the identified historical questions.

If discovery establishes Limited's deliberate, suit-related U.S. commerce, that participation would also inform reasonableness alongside its litigation burden, the federal interest in adjudicating alleged RICO violations, and Arena's interest in effective relief. *Plixer*, 905 F.3d at 12–13. The Court should defer ruling while the focused discovery requested in Argument I develops those material jurisdictional facts.

## IV. Corporate separateness requires Limited-specific contacts; Massachusetts and pendent jurisdiction preserve additional routes.

Limited's holding-company status does not foreclose jurisdiction based on its own suit-related conduct or contacts properly attributable to it. Direct jurisdiction and attribution are distinct inquiries. *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1085, 1091 (1st Cir. 1992). An established agency relationship or ratification of conduct undertaken on a principal's behalf can support attribution. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55–56 (1st Cir. 2002). Ordinary ownership does not establish either route, and attributed contacts must still satisfy the applicable jurisdictional requirements.

The discovery requested in Argument I addresses those requirements through defined transactions and functions. The tracing identifies thirteen PackDraw-attributed deposits, and the FAC alleges corresponding account crediting and availability for wagering, transfer, conversion, or withdrawal. FAC ¶¶ 213–248. Wallet permissions, processing instructions, withdrawal approvals, and intercompany agreements would identify whether Limited performed those functions or authorized personnel to act on its behalf. The August 2026 Terms and Hartmann's declaration identify the corporate relationship and current operator but do not explain the allocation of transaction authority during November 2025. Terms at 1, 26; Hartmann Decl. ¶¶ 2–4. The inquiry concerns actual responsibility for the challenged conduct and its forum connection.

Massachusetts jurisdiction requires a separate statutory showing before constitutional analysis. *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 329–30 (2017). Section 3(d) requires tortious injury within the Commonwealth from outside conduct, together with regular business, a persistent course of conduct, or substantial revenue from qualifying Massachusetts activity. Sections 3(a) and 3(b) require claims arising from Massachusetts business or supply arrangements. Customer-location, transaction, and revenue records can test those requirements against Limited individually. Arena's residence and notice of his location do not alone establish the necessary injury or Massachusetts-directed conduct.

If Rule 4(k)(2) establishes jurisdiction over Limited on the RICO claim, the Court should also exercise pendent personal jurisdiction over the related state-law claims. *Lighthouse Masonry, Inc. v. Vision Construction Management, Inc.* applied that discretionary doctrine to additional claims against the same defendant sharing a common nucleus of operative facts. 794 F. Supp. 3d 51 (D.R.I. 2025). Although *Mojtabai v. Mojtabai* reserved recognition of the doctrine, its rejection of attribution across different legal persons does not implicate Arena's request. 4 F.4th 77, 88–89 (1st Cir. 2021). All relevant claims here are against Limited and concern the same traced assets, recipient accounts, alleged processing, knowledge, and disposition. Their substantial evidentiary overlap favors adjudication together.

The Court should permit the focused inquiry into Limited's direct and attributable contacts and, upon establishing jurisdiction over its RICO claim, retain the related claims against that same defendant.

## V. Any jurisdictional dismissal of Limited should be without prejudice, with an opportunity to seek supported amendment.

If the Court finds jurisdiction over Limited lacking and declines discovery, any dismissal should be without prejudice. A jurisdictional ruling does not adjudicate the merits. Fed. R. Civ. P.

41(b). In *Rodriguez-Rivera v. Allscripts Healthcare Solutions, Inc.*, the First Circuit affirmed dismissal of a holding-company parent for insufficient contacts but modified the judgment to make that dismissal without prejudice. 43 F.4th 150, 162 (1st Cir. 2022). The same disposition is required here: Limited's amenability to suit is distinct from the validity of Arena's claims and another entity's responsibility for the challenged transactions.

The Court should also afford Arena an opportunity to submit a supported motion to amend. Rule 15(a)(2) directs courts to give leave freely when justice requires, while permitting denial for futility and other recognized grounds. Adding a defendant without an adequate jurisdictional basis may be futile. *Katz v. Liberty Power Corp., LLC*, 693 F. Supp. 3d 154, 158 (D. Mass. 2023). Hartmann's declaration and the current Terms identify PackDraw US, LLC as operator, providing a concrete basis to examine that entity's responsibility. Hartmann Decl. ¶¶ 2–3; Terms at 1. Any proposed amendment must identify its relevant historical conduct and an independent basis for jurisdiction in this District; its Delaware organization alone would not suffice.

Transfer should be considered if a qualifying receiving court is established. Section 1631 permits transfer for lack of personal jurisdiction when the action could have been brought in that court at the relevant filing time and transfer serves the interest of justice. *Fed. Home Loan Bank of Boston v. Moody's Corp.*, 821 F.3d 102, 119 (1st Cir. 2016), abrogated on other grounds by *Lightfoot v. Cendant Mortgage Corp.*, 580 U.S. 82 (2017). Where venue is defective, § 1406(a) likewise permits transfer despite the transferor court's lack of personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Those requirements must be established for the affected defendant and claims. US, LLC's Delaware organization does not establish a transferee forum for claims against Limited, and the Terms' Florida provisions require examination of their parties, applicable version, scope, and

enforceability. Terms at 1, 14. Arena therefore requests consideration of severance and transfer if the record establishes an appropriate forum, while reserving supported amendment or a separate action against US, LLC. Any jurisdictional dismissal of Limited should preserve those opportunities without resolving the merits or assuming jurisdiction over either entity.

## CONCLUSION

For the foregoing reasons, Arena respectfully requests that the Court deny PackDraw Limited's motion to dismiss. Alternatively, the Court should defer ruling, permit the targeted jurisdictional discovery requested in Argument I, and allow supplemental briefing. Any jurisdictional dismissal should be without prejudice, with an opportunity to seek supported amendment or, if the statutory prerequisites are established, severance and transfer.

JOSEPH ARENA

By his attorneys,

*/s/ Christina M. Murray*
Christina M. Murray
BBO #706426
Jonathan P. Whitcomb
BBO #704522
DISERIO MARTIN O'CONNOR
CASTIGLIONI LLP
c/o GESMER UPDEGROVE LLP
40 Broad Street
Boston, MA 02109
cmurray@dmoc.com
jwhitcomb@dmoc.com

T. Liam Murphy
MURPHY'S LAW:
THE CRYPTO LAW FIRM
353 Lexington Avenue, 4th Floor, Suite 400
New York, NY 10016
liam@murphyslawcrypto.com

CERTIFICATE OF SERVICE

I, Christina Murray, do hereby certify I caused a true copy of the foregoing document to be served through the Court's Electronic Case Filing ("ECF") system upon all counsel of record in this action.

/s/ Christina M. Murray