**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH ARENA,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-12914-JEK<br><br>Leave to file Reply Brief given on October 9, 2026 |

**DEFENDANT CHN GROUP LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

ChangeNOW's opening memorandum in support of its motion to dismiss the First Amended Complaint established two independent and complete defenses: this Court has no personal jurisdiction over a foreign exchange with no alleged United States contacts, and Plaintiff's only federal claim—civil RICO—fails as a matter of law because the theft, not any later swap, caused his loss. Plaintiff's Opposition, ECF 60, answers neither. On jurisdiction, Plaintiff rests almost entirely on a 2026 terms-of-service page that he concedes does "not alone establish [the program's] operation during the November 2025 transactions." Opp. 8. He then asks for wide-ranging jurisdictional discovery to hunt for a United States connection he has not (and cannot) plead. On RICO, Plaintiff abandons the theft as the basis for his injury and retreats to a "diminished recoverability" theory that has no legal or factual basis. Plaintiff has already amended once and briefed these issues in full, yet he still cannot identify a single United States connection or a loss that ChangeNOW caused. Plaintiff also now concedes that his attempt to serve ChangeNOW was defective, and he asks to re-plead rather than face dismissal. He has had his chance. The Court should grant ChangeNOW's motion and dismiss the First Amended Complaint with prejudice.

**I. There Is No Nationwide Personal Jurisdiction Over ChangeNOW.**

ChangeNOW is a foreign company with no United States contacts. A federal claim gets Plaintiff to Rule 4(k)(2), but the Rule still demands nationwide contacts, and Plaintiff pleads none.

Plaintiff asserts personal jurisdiction over ChangeNOW under Rule 4(k)(2), which permits jurisdiction only where (1) the claim at issue "arises under federal law," (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (3) "exercising jurisdiction is consistent with the United States Constitution and laws," specifically, with the Due Process Clause of the Fifth Amendment. Fed. R. Civ. P. 4(k)(2); *see Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1 (1st Cir. 2018). The third element requires Plaintiff to show that the defendant has adequate contacts with the United States as a whole. *Id*. Plaintiff cannot carry his burden of showing constitutionally sufficient national contacts. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999). Plaintiff invokes that case's burden-shifting framework, Opp. 7, but the burden shifts to the defendant only after the plaintiff makes a *prima facie* showing of national contacts. 191 F.3d at 41. By Plaintiff's own account, that showing requires "specific evidence sufficient, if credited, to establish jurisdiction." Opp. 5–6. Allegations "on information and belief" and a webpage dated five months after the transactions are *not* sufficient evidence of *anything*. The possibility of United States users—none identified, none quantified, none connected to this case—is not the basis for nationwide jurisdiction that the Fifth Amendment requires. This is particularly true given ChangeNOW's role in this case as a liquidity provider that did not even interface directly with consumers. The Court should dismiss on this basis alone.

Under the First Circuit's nationwide minimum-contacts standard, Plaintiff must show his claim "directly arises out of or relates to" ChangeNOW's United States activities, that those activities represent a "purposeful availment" of the privilege of conducting activities in the United

States, and that exercise of jurisdiction is reasonable. *See Saul v. Valnet Inc.*, No. 1:25-CV-12236-JEK, 2026 WL 1878312, at *3 (D. Mass. June 30, 2026) (citing *Plixer Int'l*, 905 F.3d at 7). Plaintiff falls short at every step. The FAC alleges that ChangeNOW conducts business in the United States only "on information and belief," FAC ¶¶ 71, 73–74, and, in his Opposition, points to ChangeNOW's 2026 Pro Terms §1.4 and General Terms §11.1 (the "Terms") to suggest that United States users *might* access ChangeNOW's services through third-party processors. Opp. 8. Plaintiff admits the Terms "do not alone establish [the program's] operation during the November 2025 transactions," *id*., but he offers nothing else. A process by which United States users might someday reach the service is not purposeful availment, and it is not the substantial, recurrent United States business the Fifth Amendment demands. *See Plixer* Int'l, 905 F.3d at 6–7. The relatedness inquiry similarly fails because Plaintiff does not allege that he ever used ChangeNOW's platform. His loss began with a theft by an unknown actor who routed the allegedly stolen funds through ChangeNOW; there is no alleged connection between any United States activities of ChangeNOW and Plaintiff's claims.

*Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), Opp. 7, does not change the analysis. Courts in this District and elsewhere have questioned whether *Fuld* applies to Rule 4(k)(2) and have declined to apply it. *See Saul*, 2026 WL 1878312; *Enhanced US LLC v. World Aquatic*, No. 25-CV-7096 (JMF), 2025 WL 3206662, at *5 n.3 (S.D.N.Y. Nov. 17, 2025) (collecting cases); *Gligorov v. Nation of Brunei*, 185 F.4th 1169, 1180 (D.C. Cir. 2026) (calling Rule 4(k)(2) "an odd fit" for *Fuld*). And *Fuld* would not support jurisdiction even if it applied. The extent of the defendant's United States contacts and the reasonableness of the assertion remain relevant, *King v. Bon Charge, LLC*, 823 F. Supp. 3d 508, 517 (D. Del. 2025) (*citing Fuld*, 606 U.S. at 6–7), and courts applying *Fuld* have dismissed foreign defendants whose alleged conduct

occurred entirely abroad. *See X Corp. v. World Fed'n of Advertisers*, 826 F. Supp. 3d 772 (N.D. Tex. 2026); *In re Diisocyanates Antitrust Litig.*, No. 18-1001, 2026 WL 522845, at *11 (W.D. Pa. Feb. 25, 2026).

Plaintiff's fallback theories approximate a circular firing squad. Rule 4(k)(2) applies only if ChangeNOW is not subject to jurisdiction in any state's courts of general jurisdiction, and Plaintiff certified that, after reasonable investigation, he could identify no such state. FAC ¶ 69; Opp. 7. Two pages later, he asks for discovery into "Massachusetts jurisdiction under Rule 4(k)(1)(A) and G.L. c. 223A, § 3(d)." Opp. 9. Ten pages after that, he asks for leave to transfer to some other district where the action "could have been brought." Opp. 19. Plaintiff cannot have it all three ways. If Massachusetts or any other state can exercise jurisdiction over ChangeNOW, Rule 4(k)(2) is unavailable. If none can, the long-arm and transfer requests fail. A certification that no state has jurisdiction does not give Plaintiff a license to go looking for one.

Finally, Rule 4(k)(2) supplies jurisdiction only for a claim "arising under federal law," and Plaintiff's sole federal claim—RICO—fails as a matter of law for the reasons in Part III. When that claim falls, so does the only basis for nationwide jurisdiction, and Plaintiff's fallback request for pendent personal jurisdiction over the state-law claims, Opp. 9, falls with it.

## II. Jurisdictional Discovery Is Not Warranted.

Plaintiff bears "the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." *Ryan v. Newark Grp., Inc.*, 814 F. Supp. 3d 7, 22 (D. Mass. 2025) (internal quotation omitted). Failure to allege specific contacts relevant to establishing personal jurisdiction is "fatal" to a jurisdictional discovery request. *Id.* at 21 (quotations omitted). Courts in this District have "routinely denied" jurisdictional discovery. *Id.* Plaintiff offers only conjecture.

Plaintiff's own authorities confirm the point. He cites *Swiss American Bank* for the proposition that a "diligent plaintiff presenting a colorable jurisdictional claim may obtain limited discovery." Opp. 6, 9, 18 (*citing* 274 F.3d 610, 625–26 (1st Cir. 2001)). But the First Circuit in that case affirmed the denial of jurisdictional discovery because the plaintiff's showing was not colorable. 274 F.3d at 626–27. And *Plixer* did not hold that any plaintiff who names a foreign exchange gets discovery; *Plixer* sustained jurisdiction on a record of three and a half years of actual sales to 156 United States customers. 905 F.3d at 4–5, 8–9. Plaintiff's allegations do not come close.

*Ryan* denied discovery where the plaintiffs offered "no facts, no specific avenue of inquiry, and no argument about why jurisdiction would be found if discovery were permitted." 814 F. Supp. 3d at 23. The same is true here. Plaintiff pleads ChangeNOW's United States contacts solely "on information and belief" and "to the extent" they exist; he identifies no actual United States customer, transaction, or targeted conduct—only a 2026 terms page referencing the possibility of access through third-party processors. A request to search for a jurisdiction the pleadings do not supply is precisely the "fishing expedition" that the Court should deny. *See X Corp.*, 826 F. Supp. 3d 772 (denying discovery where plaintiff alleged no jurisdiction-triggering conduct by the named defendant); *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 31 (D.D.C. 2017) (a plaintiff "is not entitled to jurisdictional discovery just because it hopes that it might turn something up").

*Gonzalez v. BAM Trading Servs., Inc.*, No. 2:24-cv-10286 (BRM) (CF), 2026 WL 2607359, at *11 (D.N.J. Sept. 3, 2026), does not help Plaintiff. It held only that the location of the thief and of the accounts used to launder the stolen cryptocurrency was "not needed to make a prima facie showing of personal jurisdiction at this stage" and was "better addressed through discovery"—after it had already found a *prima facie* case because the defendant, Binance, had

done "substantial" and "recurrent" business in the United States. Nothing comparable is alleged here—and Plaintiff disclaims any attempt to "substitut[e] Binance's established contacts for ChangeNOW's." Opp. 8. Without those contacts, *Gonzalez* is irrelevant.

## III. The RICO Claim Fails.

### A. Plaintiff concedes the theft caused his loss, and post-theft laundering is not the proximate cause.

Plaintiff cannot rehabilitate his proximate-cause theory, and he does not try. His Opposition opens: "Hours after Doe stole approximately $500,000 in cryptocurrency from Joseph Arena ("Arena"), six identified Bitcoin inputs entered HoudiniSwap transactions *using ChangeNOW liquidity*." Opp. 1. That sentence's concessions are fatal: ChangeNOW had nothing to do with the theft and its only role was to supply "liquidity" to a separate swap business. Plaintiff cites no case holding a business two rungs removed from the crime liable under RICO. That is akin to charging a screwdriver manufacturer with bank robbery because it sold screwdrivers to Home Depot, which sold them to thieves, who used them to break into the vault.

Given this set of circumstances, Plaintiff is forced to acknowledge that "value already irretrievably lost through Doe's antecedent conduct falls outside [his] theory," Opp. 17, and that his alleged injury is instead "additional economic deprivation caused by ChangeNOW's own transactions," *id*. In short, Doe caused Plaintiff to lose his funds, not ChangeNOW. RICO requires a direct relation between the injury asserted (here, the allegedly lost funds) and the injurious conduct alleged (here, the alleged money laundering). *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). At least one predicate act must be "the proximate cause" of the injury. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–58 (2006); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

Plaintiff's fallback of diminished recoverability is not a cognizable RICO injury. Plaintiff was not separately harmed by the money laundering and may recover the full amount from Doe; the sum owed has not been devalued as a result of the alleged laundering. *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1134 (9th Cir. 2020). *Watt v. OKCoin USA Inc.*, No. 25-CV-00368-JSW, 2026 WL 880154 (N.D. Cal. Mar. 31, 2026), underscores the point. There, the court rejected an attempt to split a cryptocurrency theft into an initial dispossession and a later loss of recoverability, holding that "the proximate cause of Plaintiffs' injury was not crypto laundering; it was theft." *Id*. at *6. Plaintiff accepts *Watt*, Opp. 17, and then pleads the theory *Watt* rejected: "loss of recoverable property attributable to those transactions." *Id*. (citing FAC ¶¶ 521–527). He never says what "additional" property he lost. By his own account, the swaps exchanged 1.885 BTC of already-stolen funds for other assets that moved on to PackDraw. Opp. 2, 4. A thief who converts stolen Bitcoin into stolen DAI takes nothing further from the victim. Plaintiff concedes that "[c]ontinuing ownership and traceability do not themselves establish that loss," Opp. 17, and the First Amended Complaint identifies nothing else. Discovery into ChangeNOW cannot cure this fundamental legal defect.

### B. ChangeNOW did not operate or manage any enterprise, and *Oreto* confirms it.

Plaintiff does not dispute that ChangeNOW's alleged role involved automated order-filling. He argues only that *United States v. Oreto,* 37 F.3d 739 (1st Cir. 1994) lets a "lower-level participant" conduct an enterprise by "knowingly implementing" its decisions. Opp. 16. *Oreto* does not help him. It addressed how far down an enterprise's own chain of command § 1962(c) reaches, and the defendants there knowingly carried out the decisions of the enterprise they worked for—a loansharking operation. *Id.* 750–51 (1st Cir. 1994). ChangeNOW's independent automated swap service does not sit inside any enterprise's chain of command; it is an outsider. *Reves* placed

this beyond § 1962(c). *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993). Courts in this District dismiss RICO claims against service providers, including banks and professionals that kept providing services "with full knowledge" of a fraud, because performing one's own ordinary functions is not directing an enterprise. *Bowdoin Constr. Corp. v. R.I. Hosp. Tr. Nat'l Bank, N.A.*, 869 F. Supp. 1004, 1009 (D. Mass. 1994). ChangeNOW's alleged exercise of "discretion over whether the identified swap legs would execute" describes an ordinary commercial function, not control of a laundering enterprise or operation within one. Plaintiff concedes that "commercial participation alone would not suffice," Opp. 16, and he alleges the execution "discretion" that supposedly makes the difference only "on information and belief." *Id*. That is the whole case: an automated exchange filled orders, and Plaintiff suspects it had a choice.

Last, Plaintiff concedes that he will abandon the § 1957 predicate "unless adequately supported," Opp. 19, and that the "suspected" origin of funds in a different wallet "remains material" to his only continuity theory, Opp. 16. That is a concession that neither the predicate act nor the pattern is adequately pleaded today. The only "prior activity" Plaintiff offers for open-ended continuity is money that a threat-actor address—not ChangeNOW—allegedly received from other "suspected" victims. Opp. 16 (*citing* FAC ¶ 512-518). That is not an allegation about ChangeNOW at all. Plaintiff also concedes that concealment must be a transaction's purpose, "rather than merely its effect," Opp. 15 (*citing Cuellar v. United States*, 553 U.S. 550, 563–68 (2008)), yet he infers purpose from nothing but effects: "successive transformations" and "converging destinations." *Id*.

## IV. The State-Law Claims Fail.

*Conversion*. Plaintiff does not plead that ChangeNOW actually knew the funds were stolen; he asks the Court to infer it from the transaction pattern and ChangeNOW's alleged access to data.

Opp. 11. Massachusetts law forecloses that inference: risk and "red flags" do not create a strong inference of actual knowledge. *Go-Best Assets Ltd. v. Citizens Bank of Mass.*, 463 Mass. 50, 56 (2012). Plaintiff's chief authority, *Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 269 (D. Mass. 2016), is distinguishable: there, the bank's own monitoring systems had flagged the activity, and a manager lifted account restraints so the fraud could proceed. Plaintiff alleges nothing of the kind, and concedes that neither data access nor zeroShadow's after-the-fact report "substitutes for contemporaneous knowledge" that is not pleaded. Opp. 12. What remains is a pattern—six inputs in thirty-two minutes—that Plaintiff says ChangeNOW should have recognized (even though the transactions were initiated on HoudiniSwap). Opp. 11–12. That is a red-flag theory by another name, and *Go-Best* rejects it. Further, providing an automated swap on ordinary terms is not substantial assistance. *Hollis v. JPMorgan Chase Bank*, N.A., No. CV 12-10544-JGD, 2014 WL 12792255, at *7 (D. Mass. Dec. 10, 2014).

*Fraudulent transfer.* Plaintiff's alternative-interest theory does not save Count V. A swap exchanges an input asset for an output asset of corresponding value—the paradigm of a transfer "for a reasonably equivalent value," which G.L. c. 109A, § 9(a) protects. ChangeNOW supplied that value and, as Plaintiff's own tracing report confirms, was a source of liquidity, not the transferee of Plaintiff's property. FAC Ex. A (ECF No. 46-1) at 6–7. Plaintiff's "alternative interest" theory defeats itself. He posits that Doe acquired an interest in the swap outputs and then transferred it. Opp. 13. But those outputs did not exist until ChangeNOW delivered them, and by Plaintiff's own tracing they went to PackDraw-attributed addresses, not to ChangeNOW. Opp. 2, 4. ChangeNOW cannot be the transferee of an interest that came into being only when ChangeNOW handed it to someone else.

**V. Service Does Not Save the Case; Leave to Amend and Discovery Would Be Futile.**

The service dispute changes nothing. ChangeNOW asked the Court to quash the defective email service. Plaintiff does not defend that service. He concedes that actual notice does not cure it, Opp. 10, and asks instead for leave to try again through the Hague Convention. Opp. 9–11. ChangeNOW does not quarrel with quashing. But quashing service does not revive a complaint that fails for want of jurisdiction and on the merits.

Plaintiff's requests for discovery, a service schedule, and leave to amend should be denied because the core defects in his case are legal, not factual. No discovery into ChangeNOW's customers or revenue can make post-theft laundering the proximate cause of a theft loss, or make an automated service the operator of an enterprise. Amendment would be futile. Plaintiff has already amended once and cured nothing. He does not identify a single new fact he would plead. He asks instead for thirty days to think of some. Opp. 18–19. His own authority forecloses that request: a plaintiff who wants leave to amend must file a motion and a proposed pleading, not reserve the right to do so after judgment. *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36–38 (1st Cir. 2022) (cited at Opp. 19). The only amendment Plaintiff previews is a subtraction—dropping the § 1957 predicate. Opp. 19. Taking claims out of a complaint does not cure the ones that remain.

## CONCLUSION

For these reasons and those stated in its opening memorandum, ChangeNOW respectfully requests that the Court dismiss the First Amended Complaint as to ChangeNOW with prejudice.

Dated: October 16, 2026

Respectfully submitted,

DEFENDANT CHN GROUP LLC
(d/b/a CHANGENOW),

By its attorneys,

*/s/ Eric S. Rosen*
Eric S. Rosen
Emily Scarisbrick Weisberg (*pro hac vice forthcoming*)
DYNAMIS LLP
175 Federal Street, Suite 1200
Boston, MA 02110
erosen@dynamisllp.com
escarisbrick@dynamisllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was filed through the Court's CM/ECF system, which will send notification of such filing electronically to all counsel of record, on October 16, 2026.

*/s/ Eric S. Rosen*
Eric S. Rosen